562 So.2d 795 (1990)
STATE of Florida, Appellant,
v.
Herbert Lee HUGHES, and Jerry William Tamlin, Appellees.
Nos. 89-889, 89-990.
District Court of Appeal of Florida, First District.
May 29, 1990.
*796 Robert A. Butterworth, Atty. Gen., A.E. (Ned) Pooser, IV, Asst. Atty. Gen., for appellant.
Barbara M. Linthicum, Public Defender, David P. Gauldin, Asst. Public Defender, for appellees.
NIMMONS, Judge.
The State of Florida appeals from an order of the trial court suppressing as evidence the cocaine seized from the appellees' automobile. We reverse.
In February, 1989, officers Brown and Brannon were on routine patrol in a known drug-dealing area of Jacksonville. At approximately 1:30 A.M., the officers saw appellees in a 1974 VW "Bug" legally parked on a public street. The officers did not observe any sign of illegal activity and the state concedes that there was no ground for stop or detention. The officers' suspicions were aroused, however, when they noted that the appellees seemed to become very nervous upon seeing the officers.
Officer Brannon pulled his patrol car behind appellees' vehicle and stopped approximately five feet behind the vehicle. Brannon left his headlights on, exited his car and walked over to the passenger side while Officer Brown walked over to the driver's side. The window on the passenger side was down and Officer Brannon shined his flashlight inside and observed on the floorboard crack cocaine, a substance with which he was familiar. Although there was some conflict between the two officers' testimony as to what they said to the appellees, the testimony was consistent that the officers said nothing to the appellees prior to Brannon's shining his flashlight into the car and observing the cocaine.[1] Neither appellee testified.
In Florida v. Royer, 460 U.S. 491, 498-499, 103 S.Ct. 1319, 1324-25, 75 L.Ed.2d 229, 236-237 (1983), the Supreme Court recognized three methods by which the police may encounter citizens. The first is known as a "consensual encounter" in which the officer needs no basis for approaching a person in a public place, identifying himself as an officer, and asking questions. The second is a "temporary detention" which requires a showing that the officer have an "articulable suspicion" that the person has committed or is about to commit a crime. The third is a formal arrest which must be based upon the more traditional principles of "probable cause."
The state acknowledges that prior to seeing the cocaine in the car, the officers had neither probable cause nor an articulable suspicion of criminal activity. But the state asserts that the initial contact which occurred prior to the sighting of the cocaine was a mere consensual encounter and that when the officer saw the cocaine, he was justified in ordering the appellees out of the vehicle and seizing the cocaine.
*797 The distinction between a consensual encounter and a seizure was discussed in Jacobson v. State, 476 So.2d 1282, 1285 (Fla. 1985):
A consensual encounter occurs when a police officer approaches a citizen and interacts in a manner such that a reasonable person would believe he was free to terminate the encounter and leave. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Fourth amendment protections are not triggered.
While an officer, like any other citizen, is free to approach someone and engage him in conversation, there comes a point when the citizen approached is no longer free to decline to converse with the officer. This point, when fourth amendment protections are triggered, occurs when there is "a show of official authority such that `a reasonable person would have believed he was not free to leave.'" Florida v. Royer, 460 U.S. at 502, 103 S.Ct. at 1326 (quoting Mendenhall, 446 U.S. at 554, 100 S.Ct. at 1877 (opinion of Stewart, J.)).
The appellees assert that under the intimidating circumstances of the instant case, the functional equivalent of a "stop" occurred. We disagree. The appellees were not physically detained, ordered to stop, or held in any manner. McCreary v. State, 538 So.2d 1377 (Fla. 1st DCA 1989), upon which the trial court apparently relied[2], is distinguishable. There, this court referred to the officers' actions of ordering McCreary out of the car in finding that an investigatory stop had occurred. Such actions by the officers prior to observing the cocaine are absent from the instant case.
In J.C.W. v. State, 545 So.2d 306 (Fla. 1st DCA 1989), J.C.W., a female juvenile, was walking with a male whom the police suspected of carrying crack cocaine. The officers were suspicious of her because of their knowledge that drug dealers often used juveniles to carry their drugs for them. The court stated:
[Officer] Crumpler's first course of action was to direct the male suspect to the patrol car and conduct a pat-down search. No narcotics were found on his person. Crumpler then stopped the appellant, who at that point had walked approximately 15 feet away. He inquired as to her name, age, and address, and then "went into the reason why she was being stopped, the mule idea." According to Crumpler, he then asked appellant "if it would be okay if [he] searched her for any illegal narcotics," appellant consented, then reached into her top left-hand shirt pocket for what appeared to be a napkin. Crumpler stopped appellant's hand and removed the napkin, and found it to contain a small bag of crack cocaine.
* * * * * *
The facts in the instant case do not indicate that Officer Crumpler's encounter with the appellant was so forceful, intimidating, or oppressive that a reasonable person would have believed she was not free to leave, and do not include any of the threatening or coercive indicia of seizure outlined in U.S. v. Mendenhall. The appellant was not physically detained, ordered to stop, or held in any manner.
545 So.2d at 306, 307. See also McLane v. Rose, 537 So.2d 652 (Fla. 2nd DCA 1989); State v. G.H., 549 So.2d 1148 (Fla. 3rd DCA 1989); State v. Simons, 549 So.2d 785 (Fla. 2nd DCA 1989); Lightbourne v. State, 438 So.2d 380 (Fla. 1983).
The appellees were not stopped, physically detained or held in any manner. The officers did not do or say anything to communicate to appellees that they were not free to go. Although the circumstances involved in this kind of encounter may well be somewhat intimidating to those of heightened sensibilities, that is true of many citizen encounters, including the ones which were involved in the above cited cases. Nevertheless, to disallow the conduct of the officers in the instant case would unduly curtail legitimate investigative *798 activities. See United States v. Mendenhall, 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); Lightbourne, 438 So.2d at 388.
The officers, therefore, having properly situated themselves outside the appellees' automobile in such a way that they, with the aid of a flashlight, were able to clearly see the crack cocaine on the floorboard of the vehicle, were entitled to lawfully seize the cocaine without a warrant. State v. Ashby, 245 So.2d 225 (Fla. 1971); State v. Coleman, 502 So.2d 13 (Fla. 4th DCA 1986); State v. Milmoe, 541 So.2d 718 (Fla. 4th DCA 1989); State v. Hall, 352 So.2d 940 (Fla. 1st DCA 1977); United States v. Lara, 517 F.2d 209 (5th Cir.1975). 1 LaFave, Search and Seizure (2d ed.), § 2.2(b); 14 Fla.Jur.2d, Criminal Law, § 502.
REVERSED.
ERVIN, J., and THOMPSON, FORD L. (Ret.), Associate Judge, concur.
NOTES
[1] Officer Brannon testified that he did not say anything to appellees prior to ordering them out of the car. Officer Brown, on the other hand, testified that Brannon, after shining his flashlight into the car, asked appellees what they were doing, to which they replied, "We're sitting here not doing anything wrong."
[2] The trial court's abbreviated order cited no authorities or rationale. However, during arguments on the motion to suppress, the court's comments reflect its reliance upon McCreary.