749 So.2d 590 (2000)
Robert T. MORRIS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-104.
District Court of Appeal of Florida, Fifth District.
January 28, 2000.
Joerg F. Jaeger of Jaeger & Blankner, Orlando, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Patrick W. Krechowski, Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, J.
Robert T. Morris appeals the order withholding adjudication of guilt of possession of a controlled substance, MDMA.[1] Morris contends that the court erred in denying his motion to suppress. After the court denied the motion, Morris entered a plea of nolo contendere reserving his right to appeal the suppression issue, and the state stipulated that the issue was dispositive. We affirm.
Deputy Craig Campbell testified that on 15 June 1998, at about 1:30 a.m., he was working while off-duty at an Orange County nightclub. Tyrone Wiggins, who worked "inside security," informed Campbell that he observed an individual who was in a stall in the men's room, and whose foot was up on the toilet. Campbell testified that Wiggins had said that he observed the individual "with his foot on the toilet retrieving something from his boot." According to Campbell, Wiggins believed the individual in the stall was engaged in "suspicious activity" involving *591 illegal narcotics. By that time the individual was within eyeshot, and Wiggins pointed him out to Campbell. Campbell did not recall whether Wiggins and another bouncer brought Morris to him.
Campbell testified that he made casual contact with Morris: "Hi, how are you? You mind if I talk to you for a second?" Another deputy was present, but he did not question Morris. At some point Campbell obtained an identification card from Morris. The picture on the identification appeared to depict Morris. Campbell advised Morris that he was "the subject of suspicious activity" and asked Morris if he could search him for weapons or contraband. Campbell was uniformed and was holding Morris' identification when he asked permission to search Morris. Campbell did not tell Morris that he was not free to leave or that there would be negative consequences if he refused. Morris consented. Campbell testified that he believed he may have been waiting for a teletype reporting whether there were any outstanding warrants on Morris. Campbell felt a lump in Morris' right sock, rolled down the sock, and discovered a plastic bag containing tablets. The conversation and search took place in a courtyard in front of the establishment. A "matter of minutes" elapsed between the time Campbell first approached Morris and the time he searched Morris.
Morris testified that as he left the establishment he was tapped on the shoulder by a bouncer who asked to speak to Morris outside. One bouncer led, and another walked behind Morris. When he arrived outside, two officers were in front of him and two bouncers were behind him. An officer said, "How are you doing? Can I see your I.D." Morris thought he was not free to leave. Further, Morris testified, the officer had his identification, so he could not leave anyway.
On cross-examination Morris admitted that the identification he presented to the officer was fake. Morris testified that he completed high school and one year of college. When the officer pulled out the pills, Morris told him they were MDMA, or ecstasy. He agreed on cross-examination that he had been taught to respect law enforcement because his father is a sheriff. He testified he did not know that he had a choice in the matter of the search, and complied out of respect rather than fear.
The trial court stated at the hearing that the officer had a reasonable suspicion to stop Morris and that Morris' subsequent permission to search was voluntary. Morris concedes that his initial encounter with the deputies was constitutional. He recognizes that the law is well-settled that officers may freely approach a citizen and ask "a few questions" without triggering Fourth Amendment concerns. State v. Collins, 661 So.2d 962 (Fla. 5th DCA 1995). He contends, however, that the initial encounter evolved into an unlawful investigatory stop. To support his argument, Morris asks this court to consider several indicators: the deputies and bouncers blocked his way so he could not get through; he was accused of being involved in criminal activity; and, the deputy seized his identification, which prevented him from leaving. Citing Michigan v. Chesternut, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), Morris argues that under the totality of the circumstances, no reasonable person in his shoes would have felt free to terminate the encounter. See also Barna v. State, 636 So.2d 571 (Fla. 4th DCA 1994).
Morris cites the correct law, but overlooks the facts before the court which support the judge's ruling that Morris' consent to the search was freely and voluntarily given. This evidence did not consist merely of the conclusions of the arresting officer, cf. Bailey v. State, 319 So.2d 22 (Fla.1975), but Morris' own testimony. Morris' father is a sheriff and Morris testified that he was raised to respect and obey law enforcement officers. He agreed that when the police tell you to do something *592 you are supposed to do it. His exact testimony was:
Q. You've been taught to respect the police, have you not?
A. Excuse me?
Q. You've been taught to respect law enforcement?
A. Yes, my father's a sheriff.
Q. And he's taught you to respect the police. When the police tell you to do something, you're supposed to do it?
A. Oh, yes.
Q. You didn't know you had a choice in this matter, did you?
A. No.
Q.  To follow up. So you complied with what the police did because of the way you were raised and what your father told you; correct?
A. Yes.
Q. You complied out of respect as opposed to fear; didn't you? (emphasis supplied)
A. Yes. (emphasis supplied)
We conclude that the record supports the trial court's determination that Morris voluntarily consented to the search, and that there was clear and convincing evidence that Morris' consent was not the product of unlawful police activity, coercion or submission to authority. See Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Reynolds v. State, 592 So.2d 1082, 1086 (Fla.1992).[2] A trial court has the responsibility to evaluate the totality of the circumstances before deciding whether the consent was freely and voluntarily given. A ruling on a motion to suppress is presumptively correct, and a reviewing court should interpret the evidence and reasonable inferences and deductions drawn from the evidence in a manner most favorable to sustaining the trial court ruling. Johnson v. State, 438 So.2d 774 (Fla.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724(1984). Here, evidence established that the encounter between the deputy and Morris lasted just a few minutes and was not extensive. The deputy neither threatened nor physically intimidated Morris, nor took advantage of an uneducated youth, and Morris testified that he obeyed the deputy not out of fear, but out of respect. There were ample facts to support the trial court's ruling and its decision will not be overturned on appeal. See State v. Smith, 632 So.2d 1086 (Fla. 5th DCA), cert. denied 513 U.S. 914, 115 S.Ct. 290, 130 L.Ed.2d 205 (1994).
AFFIRMED.
DAUKSCH, J., concurs.
COBB, J., concurs without participation at oral argument.
NOTES
[1] § 893.13(6)(a), Fla. Stat. (1997).
[2] In view of this holding we need not decide whether the encounter evolved into an illegal seizure.