THOMPSON, J.
William Woods, III, appeals his convictions for possession of cocaine and possession of drug paraphernalia. We reverse *561 the convictions because Woods’s consent to a search of his pockets was tainted by an illegal detention.
Deputy Spooner stopped Woods because he was driving without his headlights engaged. Woods handed over his license and registration and exited the vehicle, as ordered. Deputy Gore, who had arrived as backup, testified that Woods seemed unusually nervous, especially for a driver who had been told he was to receive only a warning citation. Gore noticed that Woods’s hands were shaking as he gave Spooner his license and registration. Also, Woods seemed unable to keep his hands out of his pockets despite repeated orders to remove his hands from his pockets. According to Gore, most people finally realize what they are doing and refrain from putting their hands in their pockets.
Spooner testified that when he learned that there were no problems with Woods’s driver’s license, he wrote out the warning citation, which he then gave to Woods along with his license and registration. As Woods began walking to his car, Spooner “called him back” and asked if there were any drugs or weapons in his car. Woods said there were not, and Spooner asked for and received permission from Woods to search the car. According to Gore, Woods offered to help Spooner, but Gore asked Woods to stay back for officer safety. Gore noticed that Woods again started putting his hands in his pockets. Because Spooner’s back was to them, Gore thought it necessary to ensure that Woods was not armed. Gore asked Woods if he had any weapons on his person, and Woods denied it. Gore testified that he “went one step further,” and asked Woods if he had any illegal narcotics on his person. When Woods denied having illegal narcotics, Gore said, “[W]ould you mind please emptying your pockets.” Asked why he asked Woods to empty his pockets, Gore testified that Woods’s demeanor led Gore to believe that there was something else there— “whether it be a weapon, some illegal substance, or maybe a prescription that he’s not supposed to have, I didn’t know what it was.” It was then that Woods removed from his pocket what appeared to be a crack pipe-a cylinder with burnt steel wool in one end — and was arrested for possession of drug paraphernalia. During a subsequent search, a piece of crack cocaine was found in Woods’s pocket.
The trial court ruled that when Spooner returned Woods’s license and registration, he and the officers became engaged in a consensual encounter and that Woods voluntarily emptied his pockets. Whether a person has consented to a search is a mixed question of fact and law. Taylor v. State, 848 So.2d 1191, 1193 (Fla. 5th DCA 2003) (citing Connor v. State, 803 So.2d 598, 605 (Fla.2001)). Mixed questions of law and fact that ultimately determine constitutional rights should be reviewed by appellate courts using a two-step approach, deferring to the trial court on questions of historical fact, but conducting a de novo review of the constitutional issue. Connor, 803 So.2d at 605 (citing United States v. Bajakajian, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998)). The appellate court’s application of the law to the facts,' including its determination of whether a defendant’s consent was objectively voluntary, is de novo. Miller v. State, 865 So.2d 584 (Fla. 5th DCA 2004).
A person is detained within the meaning of the Fourth Amendment if a reasonable person would not feel free to terminate the encounter, given the totality of the circumstances. See United States v. Drayton, 536 U.S. 194, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002). A person may not be detained even momentarily without reasonable, objective grounds. State v. Diaz, 850 So.2d 435, 438 (Fla.2003) (holding that *562 a driver who was asked for his driver’s license and registration was illegally detained because the police officer had by then read the expiration date on the driver’s temporary license tag and determined that the tag was valid) (citing Florida v. Royer, 460 U.S. 491, 498, 108 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). The scope of the detention must be temporary and last no longer. than necessary to effectuate the purpose of the stop. Id. (citing Royer, 460 U.S. at 500, 103 S.Ct. 1319). ■ Furthermore, “[o]nce a police officer has totally satisfied the purpose for which he has initially stopped and detained the motorist, the officer no longer has any reasonable grounds or legal basis for continuing the detention of the motorist.” Id. (citing Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). Any further detention must be based on a reasonable suspicion that criminal activity may be afoot. Cresswell v. State, 564 So.2d 480, 481 (Fla.1990).
It is uncontested that the initial stop of Woods was a seizure within the meaning of the Fourth Amendment of the United States Constitution. See Nelson v. State, 578 So.2d 694, 694-95 (Fla.1991) (stopping an automobile and detaining its occupant, even briefly, constitutes a seizure within the meaning of the Fourth Amendment to the United States Constitution) (citing Prouse, 440 U.S. at 653-54, 99 S.Ct. 1391). It is further uncontested that the stop was valid. The purpose of detaining Woods was satisfied when Spooner issued the warning citation. See Cresswell, 564 So.2d at 481 (detention for traffic violation must last ho longer than the time it takes to write the traffic citation).
The trial court ruled that Woods was free to go. upon receiving the citation and his paperwork, that he consented to the search of his car, and that he voluntarily emptied his pockets. Woods argues, and we agree, that he was the subject of a seizure when Gore told him to stay back while Spooner searched the car.[1] In Popple v. State, 626 So.2d 185 (Fla.1993), the court held that when an officer approached a parked car and told the defendant to exit the car, the defendant was seized. The court explained:
This Court has consistently held that a person is seized if, under the circumstances, a reasonable person would conclude that he or she is not free to end the encounter and depart. Jacobson v. State, 476 So.2d 1282 (Fla.1985). Whether characterized as a request or an order, we conclude that Deputy Wil-moth’s direction for Popple to exit his vehicle constituted a show of authority which , restrained Popple’s freedom of movement because a reasonable person under the circumstances would believe that he should comply. See Dees v. State, 564 So.2d 1166 (Fla. 1st DCA 1990).
Id. at 188.
In the instant case, no reasonable person, who is stopped nearly at midnight by two deputies, would feel free to ignore a deputy who asks the person to stay away from the other deputy during or at the conclusion of a traffic stop. Gore’s asking Woods to remain with him while Spooner searched the car “constituted a show of authority which restrained [Woods’s] freedom of movement because a reasonable person under the circumstances would believe that he should comply.” Id. see also McNeil v. State, 746 So.2d 547 (Fla. 5th DCA 1999) (defendant was seized when *563 ordered to put his hands on the patrol car); Dees, 564 So.2d 1166 (“Regardless of whether the officer ‘asked’ the defendant to [take her hands out of her pockets] the request constituted a police order under the circumstances”). Such a detention must be supported by a well-founded, ar-ticulable suspicion of criminal activity. Popple, 626 So.2d at 186. However, the fact that Woods had been nervous and had repeatedly put his hands in his pockets was not a legal justification for the detention. Compare, e.g., Hoover v. State, 880 So.2d 710 (Fla. 5th DCA 2004) (nervous behavior of driver did not justify detention beyond that necessary to accomplish purpose of traffic stop).[2] Thus, when Woods emptied his pockets, he was being detained unlawfully.
Since the unlawful detention tainted Woods’s consent to what amounted to a search of his pockets, the state had the burden of proving that his consent was freely and voluntarily given. “[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority.” Royer, 460 U.S. at 497, 103 S.Ct. 1319.
[W]hen consent is obtained after illegal police activity such as an illegal search or arrest, the unlawful police action presumptively taints and renders involuntary any consent to search. Consent will be held to be voluntary if there is clear and convincing proof of an unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal police action.
Connor, 803 So.2d at 609. Here, there was nothing to dissipate the taint of the unlawful detention of Woods. Because Woods was unlawfully seized when he consented to the search of his pockets, and because the taint of the unlawful detention was not dissipated, his consent was “ineffective to justify the search.” Royer, U.S. at 507-08, 103 S.Ct. 1319.
Accordingly, the convictions are REVERSED:
ORFINGER, J., concurs in result only, with opinion:
PLEUS, J., dissents, with opinion.

. Woods does riot argue that he was detained when Deputy Spooner "called him back" as he began to return to his vehicle.

. Moreover, Gore testified upon cross-examination that he would not have insisted if Woods had refused to empty his pockets. This contradicted the trial'court’s finding that Deputy Gore was concerned about deputy safety.