WARNER, J.
The state appeals an order suppressing drugs dropped by the defendant upon being approached by officers. The trial court' suppressed the evidence on the ground that the officers’ “show of authority” constituted an invalid stop. We hold that the officers’ conduct did not constitute a stop of the defendant. Because the defendant dropped the drugs prior to any stop, the court erred in granting the motion to suppress.
At the suppression hearing, the officers involved testified to the incident leading to the recovery of the drugs and the arrest of the defendant. Detectives Mesa and Faust were patrolling an area at night when they observed a vehicle traveling with a broken taillight. The car then pulled into an apartment complex parking lot and stopped. The officers parked about twenty feet from the vehicle and saw Kasparian, a pedestrian, approach the vehicle on the driver’s side. Mesa observed Kasparian hand the driver of the vehicle an unknown amount of U.S. currency in exchange for an unknown substance. Although he could not see the item, Mesa explained that based on his training and experience, he believed that the defendant and the driver were engaged in a narcotics transaction. Mesa also testified that a lot of narcotics transactions occurred in the area.
After Mesa saw the hand-to-hand transaction, he and Detective Faust, wearing police uniforms, exited the vehicle. Mesa testified that as they approached he did not say anything and did not recall Detective Faust announcing they were from the Broward Sheriffs Office. As they began to approach the vehicle, Kasparian saw them and threw down what he had in his hand. Mesa testified he never lost sight of the object that Kasparian dropped to the ground about a foot away. When he picked up the object, Mesa thought it was crack cocaine and conducted a field test which indicated it was cocaine. At that point, Mesa arrested Kasparian.
The trial court suppressed the evidence, finding that although the officers thought they saw a drug transaction, there was no clear evidence of that. Thus, the court found that there were no grounds for a stop based upon probable cause or reasonable suspicion. Further, the court reasoned that because the officers walked up to the car, there was a show of authority which made Kasparian drop the drugs. The state appeals this ruling.
The standard of review for motions to suppress is articulated in Rivera v. State, 859 So.2d 495 (Fla.2003):
[Ajppellate courts should continue to accord a presumption of correctness to the trial court’s rulings on motions to suppress with regard to the trial court’s determination of historical facts, but appellate courts must independently review mixed questions of law and fact that ultimately determine constitutional issues arising in the context of the Fourth and Fifth Amendment and, by extension, article I, section 9 of the Florida Constitution.
Id. at 509. See also Pagan v. State, 830 So.2d 792, 806 (Fla.2002).
The trial court determined that a stop occurred without probable cause or reasonable suspicion. We disagree with *1275 the trial court’s conclusion that a stop occurred prior to Rasparían dropping the drugs. Instead, we conclude that what transpired in this ease was a consensual encounter, not a stop.
State v. R.R., 697 So.2d 181 (Fla. 3d DCA 1997), is factually similar to the present case. In R.R, the defendant was charged with possession of a controlled substance. Based on a tip, two officers conducted surveillance of an abandoned house for fifteen minutes. They observed R.R. sitting in front of the house, listening to the radio. The officers approached. R.R. did not see the officers approach because he was adjusting his radio. When R.R. looked up, he saw two officers standing three feet from him, wearing badges and guns. Before either officer spoke, R.R. dropped two clear plastic bags containing narcotics. The officers retrieved the bags and charged R.R. with possession of a controlled substance. The trial court granted the motion to suppress the evidence finding that a show of authority existed at the point at which R.R. dropped the drugs.
The state appealed and the Third District disagreed with the trial court, finding that because the officers were several feet away from R.R. when he dropped the bag and the officers did not say a word to R.R., the encounter was consensual and did not require reasonable suspicion. The Third District explained that:
[T]he trial judge based his ultimate ruling on the erroneous impression that merely walking up to the defendant was a show of authority, and precluded the use of evidence on that issue. This is clearly not the law. We conclude that what transpired was really no different than any consensual encounter; in fact, it could be viewed as a pre-consensual encounter, in that the police did not even have time to speak before R.R. voluntarily dropped the bags of drugs.
Id. at 184.
Just as in R.R., the officers simply walked toward Kasparian and never said anything to him before he dropped the drugs. Thus, it is more like a “pre-consen-sual encounter” described by the Third District.
To determine whether there has been a consensual encounter, a court must consider all of the circumstances surrounding the encounter to determine whether the conduct of police officers would have communicated to a reasonable person that the person was not free to decline the officers’ request or otherwise terminate the encounter. State v. Livingston, 681 So.2d 762, 764 (Fla. 2d DCA 1996). Traditionally, the factors courts have considered in determining whether a seizure has occurred include: “the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer’s request might be compelled.” United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). None of these factors appear in the instant case. The court found only that the officers approached wearing uniforms, badges, and weapons and did not even announce themselves before Rasparían threw down the drugs. This is how any officer could be dressed on the street. For this to constitute a “show of authority” such that it constituted a stop would essentially eviscerate the law regarding consensual encounters.
Kasparian relies on Hollinger v. State, 620 So.2d 1242 (Fla.1993). However, we find this factually distinguishable. In Hol-linger, the defendant was charged with possession of cocaine and sought to suppress the cocaine as an unlawful seizure by *1276 police. Seven to eight members of the Orange County Sheriffs Department conducted a drug sweep. They pulled into a parking lot, exited their vehicle, and announced “Orange County Sheriffs Office.” Clad in black masks and SWAT-team-type regalia, they approached a group of people. Hollinger put his hand behind his back and dropped a tissue containing cocaine.
Upon review of a decision of the Fifth District determining that the defendant had not been illegally stopped at the time, the supreme court determined that these facts did not constitute a consensual encounter. As is readily apparent, the show of force in Hollinger is far more coercive than two officers walking up to a parked car.
For these reasons, we reverse the trial court’s order and remand for further proceedings.
KLEIN and GROSS, JJ., concur.