939 So.2d 192 (2006)
TIMOTHY CHRISTIAN BLAKE, Appellant,
v.
STATE OF FLORIDA, Appellee.
Case No. 5D05-3003.
District Court of Appeal of Florida, Fifth District.
Opinion filed October 6, 2006.
Amanda R. Jacobson of Jacobson, McClean, Chmelir & Ferwerda, Winter Springs, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Carlos A. Ivanor, Jr., Assistant Attorney General, Daytona Beach, for Appellee.
MONACO, J.
The appellant, Timothy Christian Blake, appeals from a judgment and sentence imposed on him after he entered a plea to the crime of introducing contraband into a county detention facility. At the time that he entered his plea Mr. Blake reserved the right to appeal a suppression issue. See rule 9.140(b)(2)(A)(i). The sole issue raised by him on this appeal is whether the trial court erred in denying the motion to suppress that was the subject of the reservation. We find no error and affirm.
The facts found by the trial judge after considering the evidence presented at the motion to suppress reflect that a law enforcement officer with the Seminole County Sheriff's Office while on patrol in the early morning hours observed Mr. Blake turn his truck off of a busy highway and into a parking lot between two closed businesses. Mr. Blake left his car and began walking toward one of the closed businesses. The officer pulled his patrol car into the parking lot and stopped in between one and two car lengths behind Mr. Blake's vehicle, and at approximately a 120 degree angle. The officer activated an in-car camera, which confirmed this configuration. The officer testified that his car was not blocking Mr. Blake's truck and that Mr. Blake could have left the parking lot. When Mr. Blake saw the police vehicle, he quickly returned to his truck.
The officer then illuminated his spotlight and was able to observe that three individuals were sitting in the truck. Subsequently Mr. Blake exited his truck and came toward the police officer, who by this time had also left his vehicle. The officer smelled a strong odor of marijuana and alcohol emanating from Mr. Blake, and noticed that Mr. Blake appeared to be nervous, and had heavy eyelids, bloodshot eyes, slurred speech.
According to the trial judge's findings, the officer "asked for and received from [Mr. Blake] consent to search both [Mr. Blake's] person and his truck." The search resulted in the officer recovering drugs and drug paraphernalia.[1]
Mr. Blake was charged with bringing contraband into a county detention facility, driving under the influence, possession of marijuana, and possession of drug paraphernalia. He moved to suppress the results of the search claiming that the officer executed an investigatory stop without probable cause. After his motion was denied, he reserved his right to appeal the suppression order and agreed to enter an open plea to the contraband charge, the only felony with which he was charged. The remaining misdemeanors were transferred to county court.
Mr. Blake contends that the police officer had no reasonable suspicion that he had committed, was committing, or was about to commit a crime, and was, therefore, not justified in making an "investigatory stop." According to the appellant, when the officer placed his vehicle behind his truck and turned the spotlight/flashlight on him, the officer was conducting an investigation in the absence of illegal activity. Finally, Mr. Blake argues that he gave consent to the search of his person and truck because he was acquiescing to police authority.
The trial court in denying the motion to suppress, however, found and reasoned, as follows:
The evidence shows that the Defendant was free to leave the parking lot and terminate the consensual encounter. Instead, the Defendant exited his truck and made contact with [the police officer]. Sensing that the Defendant may be impaired, [the police officer] requested and received permission to search his truck and his person. Thus, [the police officer's] actions were proper.
Based on the facts presented to us, and these findings of the trial judge, we find no error in the denial of the motion to suppress.
The ruling of a trial court on a motion to suppress comes to an appellate court clothed with the presumption of correctness, and under well-established law a reviewing court must interpret the evidence and reasonable inferences and deductions derived from the ruling in a manner most favorable to sustain the trial court. See Doorbal v. State, 837 So. 2d 940, 952 (Fla.), cert. denied, 539 U.S. 962 (2003); San Martin v. State, 717 So. 2d 462, 468 (Fla. 1998), cert. denied, 526 U.S. 1071 (1999). Accordingly, while the standard of review to be applied to the trial court's factual findings is whether competent, substantial evidence supports those findings, the application by the trial court of the law to the facts is reviewed de novo. See Utu v. State, 929 So. 2d 718 (Fla. 5th DCA 2006); Houston v. State, 925 So. 2d 404 (Fla. 5th DCA), review denied, 935 So. 2d 1220 (Fla. 2006); Dewberry v. State, 905 So. 2d 963 (Fla. 5th DCA 2005); Young v. State, 803 So. 2d 880 (Fla. 5th DCA 2002); State v. Kindle, 782 So. 2d 971 (Fla. 5th DCA 2001); Hines v. State, 737 So. 2d 1182 (Fla. 1st DCA 1999); see also McMaster v. State, 780 So. 2d 1026, 1027 (Fla. 5th DCA 2001).
In Popple v. State, 626 So. 2d 185 (Fla. 1993), the Florida Supreme Court discussed the three levels of police-citizen encounters. According to the high court:
The first level is considered a consensual encounter and involves only minimal police contact. During a consensual encounter a citizen may either voluntarily comply with a police officer's request or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not involved. [Citation omitted].
The second level of police-citizen encounters involves an investigatory stop as enunciated in Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed. 2d 889 (1968). At this level, a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. § 901.151, Fla. Stat. (1991). In order not to violate a citizen's Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop. [Citation omitted].
While not involved in the instant case, the third level of police-citizen encounters involves an arrest which must be supported by probable cause that a crime has been or is being committed. [Citation omitted].
Id. at 186. Officers do not violate the Fourth Amendment by merely approaching an individual to ask if the person is willing to answer questions, provided that person is willing to listen. If, however, the officer phrases his or her inquiries as commands, this action would indicate that the individual was not free to leave, and that the encounter would lose its consensual character. See Florida v. Royer, 460 U.S. 491 (1983); S.L.R. v. State, 652 So. 2d 978 (Fla. 5th DCA 1995).
Encounters are usually consensual where the officer does not display a weapon, touch the defendant without consent, use language that might indicate compliance was compelled, intimidate the defendant, or restrict the defendant's freedom to walk away. Officers may during consensual encounters ask for names and addresses, inquire about the defendant's business, or request a consent to search. See State v. Mitchell, 638 So. 2d 1015 (Fla. 2d DCA 1994). Thus, a defendant's refusal to listen to questions or to answer them does not, without more, furnish grounds for detention. In other words, in the absence of any indicia of coercion or intimidation, an officer's questioning about criminal conduct or activity alone will not convert an otherwise consensual encounter into an unlawful seizure or detention. See State v. Poole, 730 So. 2d 340, 342 (Fla. 3d DCA 1999); see also Williams v. State, 694 So. 2d 878, 880 (Fla. 2d DCA 1997) (holding that while initial questions as to what defendant was doing behind a closed bar were permissible, subsequent request that defendant pull his waistband forward converted consensual encounter into detention).
Florida courts have consistently agreed that a law enforcement officer's use of the emergency lights or takedown lights on a police vehicle when confronting an individual constitutes an investigatory stop of that individual, rather than a consensual encounter. The reason these citizen contacts are investigatory rather than consensual is that the use of emergency lights ordinarily leads the citizen to believe that he or she is no longer free to leave. For this same reason, positioning a patrol car to obstruct the path of a vehicle once it is stopped may well elevate a consensual encounter into an investigatory stop. See Koppelman v. State, 876 So. 2d 618 (Fla. 4th DCA 2004); Young v. State, 803 So. 2d 880, 882 (Fla. 5th DCA 2002); Baker v. State, 754 So. 2d 154 (Fla. 5th DCA 2000); see also Errickson v. State, 855 So. 2d 700, 701 (Fla. 4th DCA 2003).
Thus, in Hrezo v. State, 780 So. 2d 194 (Fla. 2d DCA 2001), the defendant was parked alone in his vehicle in a public park at 9:00 p.m. The park had no posted hours of operation. A deputy parked his patrol car behind the defendant's vehicle. The deputy testified that he intended to make a citizen's contact to find out who was in the vehicle and why they were there. There was no suggestion that the officer had any reasonable suspicion of criminal activity. Before approaching the vehicle the deputy turned on the patrol car's emergency lights and takedown lights so he could see inside the vehicle. When he approached the car, the deputy asked the defendant for identification, and shined his flashlight into the car's interior. The officer recognized a glass tube inside the car as a narcotics pipe and arrested the defendant for possession of drug paraphernalia. The defendant was ordered out of his vehicle and handcuffed. After a search, cocaine was located and seized.
The trial court denied the defendant's motion to suppress, ruling that the initial encounter was consensual. Our sister court in the Second District found, however, that this contact was not a consensual encounter because the deputy illuminated his emergency and takedown lights. The court noted that the use of such lights is typically regarded as an act that initiates an investigatory stop. It reasoned that an ordinary person would at that juncture assume that he or she was being stopped, at a minimum, for a traffic infraction. Notably, however, the court distinguished between the use by an officer of a spotlight and the use of emergency lights:
We emphasize that an officer's use of a spotlight is not the same as the use of emergency lights. See State v. Wimbush, 668 So. 2d 280 (Fla. 2d DCA 1996) (reversing suppression where officers pulled along side parked car and illuminated interior of car with a spotlight, seeing cocaine on driver's and passenger's faces; initial encounter held consensual, not stop).
Hrezo, 780 So. 2d at 195. See also State v. Baez, 894 So. 2d 115 (Fla. 2004) (officer engaged in consensual encounter where he came upon defendant's vehicle and used flashlight to look inside observing defendant slumped over the wheel of his parked van); Oslin v. State, 912 So. 2d 672 (Fla. 5th DCA 2005) (officer utilizing spotlight on two men who turned toward the light, observed the officer, and then turned away and resumed walking was not investigatory stop); Siplin v. State, 795 So. 2d 1010 (Fla. 2d DCA 2001) (use of spotlight has been found not to transform a consensual encounter into an investigatory stop); State v. Boone, 613 So. 2d 560 (Fla. 2d DCA 1993) (officer's actions in shining flashlight in the direction of defendant did not transform the encounter into an unlawful stop); State v. Hughes, 562 So. 2d 795 (Fla. 1st DCA 1990) (action of officers in approaching defendant's parked vehicle and shining flashlight inside was not the functional equivalent of a stop).
In some instances, however, if a spotlight or flashlight is utilized in conjunction with other actions by an officer, a consensual encounter may convert into an investigatory stop. See Williams v. State, 874 So. 2d 45 (Fla. 4th DCA 2004) (explaining that a reasonable person would not feel free to leave under circumstances where an officer shines a flashlight in his or her face, approaches with his hand on his weapon, and directs him or her to stand); State v. Newton, 737 So. 2d 1252 (Fla. 5th DCA 1999) (a reasonable person would not feel free to leave where an officer approached defendant grabbing him by the collar, holding a flashlight to defendant's face, and ordering him to open his mouth).
Consider now Mr. Blake's purported consent to the search. Because the consent issue is often a mixed question of law and fact, two standards must be utilized on review. With respect to the historical facts surrounding consent, the record must support a trial court's determination that a defendant has voluntarily consented to a search. There must be clear and convincing evidence that a defendant's consent is not the product of unlawful police activity, coercion, or submission to authority. The trial court should evaluate the totality of the circumstances before deciding whether consent was freely and voluntarily given. On review, the appellate court's application of the law to those facts, is de novo. See Woods v. State, 890 So. 2d 559 (Fla. 5th DCA 2005); Morris v. State, 749 So. 2d 590 (Fla. 5th DCA 2000).
In the instant case the initial actions of the officer seem to demonstrate nothing more than a consensual encounter. There was no "illegal stop." No blue light or other show of police authority was utilized. Mr. Blake voluntarily left his truck and walked toward the officer. There is no evidence in the record that the officer ever gave orders to Mr. Blake or used any other coercive means to compel Mr. Blake to give him authority to search. Even though the officer admitted during cross examination to conducting "an investigation" when he approached Mr. Blake, the facts simply do not support a conclusion that the events amounted to an investigatory stop.
Once the two men met in the parking lot the circumstances changed. The officer, who was in his nineteenth year of law enforcement at the time, stated that he could immediately smell marijuana on Mr. Blake and noticed other physical signs of drug and alcohol use. It was only then that the officer asked for consent to search. At this point, however, the defendant's consent was not required. We have held on many occasions that the mere possession of marijuana is illegal. Thus, when a police officer who knows the smell of burning marijuana detects that odor emanating from a vehicle or from a person who has recently exited a vehicle, he has probable cause to believe a crime has been committed and that such person has committed it. Because the officer has probable cause, he or she is authorized to arrest the person and then to conduct a warrantless search. See State v. T.T., 594 So. 2d 839 (Fla. 5th DCA 1992); State v. Jarrett, 530 So. 2d 1089 (Fla. 5th DCA 1988); State v. Wells, 516 So. 2d 74 (Fla. 5th DCA 1987); State v. Reeves, 488 So. 2d 670 (Fla. 4th DCA 1986); State v. Bennett, 481 So. 2d 971 (Fla. 5th DCA 1986). Compare Smith v. State, 904 So. 2d 534, 537 (Fla. 1st DCA 2005).
We conclude, therefore, that there was competent, substantial evidence to support the findings of the trial court, and we conclude further that there was no error in the application by the trial court of the law to the facts in this case. Accordingly, we affirm.
AFFIRMED.
PLEUS, C.J. and TRAYNOR, J.M., Associate Judge, concur.
NOTES
[1] Blake, while at the county detention facility, was found to be in possession of a marijuana cigarette.