IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED

STATE OF FLORIDA,

        Appellant,

v.

        Case No. 5D16-647

JORDAN CHRISTOPHER BEANS,

        Appellee.

_____/

Decision filed March 31, 2017

Appeal from the Circuit Court
for Orange County,
Alicia Latimore, Judge.

Pamela Jo Bondi, Attorney General, Tallahassee, and Kristen L. Davenport, Assistant Attorney General, Daytona Beach, for Appellant.

James S. Purdy, Public Defender, and Nicole J. Martingano, Assistant Public Defender, Daytona Beach, for Appellee.

TORPY, J.

The State challenges the order suppressing a firearm and cannabis found in Appellee's car. The sole argument advanced by the State is that the encounter between Appellee and police officers was, as a matter of law, consensual. Accordingly, it urges that the trial court erred in concluding that Appellee was seized prior to the discovery of

incriminating evidence in his car. Concluding that no error has been demonstrated on the legal theory advanced by the State, we affirm.

The uniformed police officers here responded to a complaint involving noise coming from Appellee's apartment. Upon arrival, they knocked on the door. When Appellee opened the door, they could smell the odor of burning marijuana. Appellee, upon seeing the officers, immediately slammed the door. As one of the officers characterized the encounter: "he slammed the door in my face quite rudely." At that point, the officers continued to knock on the door "[b]ecause we could smell marijuana coming from the apartment." Appellee did not open the door again. Although the officers left the building, they remained in the complex parking lot and pondered whether to get a search warrant. After a few minutes, the officers saw Appellee and a female walk down the stairs, enter a car, and drive away. They followed him in a marked police car through a series of turns until Appellee stopped in a drive-thru at a fast-food restaurant. The officers followed Appellee because "[Appellee and his companion] could have taken whatever marijuana was in the apartment with them in the car . . . . And [the officers] wanted to ask [Appellee] why he slammed the door in [their'] face[s]."

The two officers approached Appellee's car within thirty seconds after it stopped in the drive-thru. Appellee's car was positioned behind another car in the drive-thru, preventing him from driving forward. One officer approached the driver's side of Appellee's car; the other walked behind the car and approached the passenger's side. The officer on Appellee's side immediately confronted him with the question "why he had slammed the door in [their] face." Appellee appeared noticeably nervous when confronted by the officer. Although Appellee testified that he did not feel free to leave at that point,

2

the officer testified that Appellee was in fact free to leave, although he did not communicate that fact to Appellee. During the ensuing conversation, Appellee moved his foot, which revealed a concealed firearm and culminated in his arrest and the search of the car.

Below, the State conceded a lack of reasonable suspicion to confront Appellee. The only legal argument it advanced was that the encounter between police and Appellee was consensual, and this is the only issue we address here. A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness, and the appellate court must interpret the evidence and reasonable inferences therefrom in a manner most favorable to sustaining the ruling. *State v. Watson*, 187 So. 3d 349, 351 (Fla. 5th DCA 2016) (citing *Pritchard v. State*, 987 So. 2d 204, 205 (Fla. 5th DCA 2008)). While the trial court's factual findings are reviewed for substantial, competent evidence, its application of the law to the facts is reviewed de novo. *State v. Thomas*, 109 So. 3d 814, 817 (Fla. 5th DCA 2013) (citing *McMaster v. State*, 780 So. 2d 1026, 1028 (Fla. 5th DCA 2001)).

Appellee's belief that he was not free to leave is not dispositive of our analysis because we use the objective standard of what a reasonable person would have believed under the totality of the circumstances. *See Caldwell v. State*, 41 So. 3d 188, 196-97 (Fla. 2010) (seizure analysis does not depend on what particular suspect believed, but on whether officer's words or actions "would have conveyed to a reasonable, innocent person that he was not free to leave" (citing *Florida v. Bostick*, 501 U.S. 429, 437-38 (1991))). "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a

3

reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Bostick*, 501 U.S. at 437 (quoting *Michigan v. Chestnut*, 486 U.S. 567, 569 (1988)). In reaching this conclusion, the courts look at many factors, none of which is individually dispositive. *United States v. Glass*, 128 F.3d 1398, 1406 (10th Cir. 1997).

Here, a number of factors cause us to conclude that the encounter was not objectively consensual. First, Appellee was initially confronted at his home by two uniformed police officers. *See United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017) (confrontation in non-public place or presence of more than one police officer, wherever confrontation occurs, militate against finding consensual encounter). Second, the words used by the officers were accusatory in nature, rather than general questions, suggesting that Appellee was not free to leave. *See United States v. Ward*, 961 F.2d 1526, 1532 (10th Cir. 1992) (officers asking accusatory questions rather than general inquiries suggests that person is not free to leave), *overruled on other grounds by United States v. Little*, 18 F.3d 1499, 1504 (10th Cir. 1994). Third, the officers did not tell Appellee that he was free to leave. *Id.* at 1533 (failure of police to advise person he is free to leave is factor militating against consensual encounter). Finally, and the factor that we deem most significant here, not only did police not tell Appellee that he was free to go about his business, they manifested quite the contrary through their conduct. Despite a clear manifestation by Appellee that he had no interest in talking to police, they continued to attempt to make contact with him by knocking on his door after he shut it, following him in a marked police car through several turns, and approaching him on foot in the drive-thru. *See United States v. Wilson*, 953 F. 2d 116, 122 (4th Cir. 1991) (police "persistence" in attempting to question defendant after clear manifestation of intent to terminate

4

encounter conveys to reasonable person that he is not free to leave); *see also United States v. Jerez,* 108 F.3d 684, 692 (7th Cir. 1997) (persistent knocking by police on motel door and window "in the face of the refusal to admit, transformed . . . [attempted] consensual encounter into an investigatory stop").

The factor on which the State and our dissenting colleague rely—that police did not themselves restrict Appellee's movement—is only one factor and is by no means more dispositive than any other factor. *See Rios v. State*, 975 So. 2d 488, 490 (Fla. 2d DCA 2007) (restraining movement is one indication of investigatory stop). The trial judge afforded little if any weight to this factor, concluding that Appellee could not back up without risking injury to the officers caused by the side-mounted mirrors. The dissent challenges the record basis for this conclusion, which was addressed only in argument of counsel. We think this was a reasonable inference from the record or, at a minimum, a proper subject for judicial notice of generally known facts.

Even if this particular finding was erroneous, we nevertheless agree with the trial judge's conclusion that little weight should be given to this factor. Appellee's easiest and safest route of departure was impeded by the car in front of him, and he was blocked by the second officer's approach from behind the vehicle, preventing him from avoiding the encounter before it began. Once the encounter began, to expect a reasonable driver to terminate an encounter by attempting to back a vehicle out of a drive-thru while two officers stand straddled on both sides, running the risk of injury to the officers, is an inherently undue burden. Furthermore, there was little reason for Appellee to believe that another attempt to terminate the contact with these two persistent officers would be any more successful than the first. They apparently were not inclined to take "no" for an

5

answer, for obvious reasons. Accordingly, even if this one factor weighs in favor of the State's position, we conclude that it is outweighed by the other factors we have addressed.

AFFIRMED.

ORFINGER, J., concurs.

BERGER, J., dissents with opinion.

BERGER, J., dissenting.                                                Case No. 5D16-0647

This case involves the suppression of a firearm, found in plain view, during a police encounter in the drive-thru lane at a fast-food restaurant. The trial court suppressed the firearm after concluding the officers had unlawfully detained Appellee. In my view, this conclusion is not supported by the evidence. Accordingly, I dissent.

There are three types of police/citizen encounters: (1) consensual encounters; (2) investigatory stops; and (3) arrests. State v. Bullock, 164 So. 3d 701, 704 (Fla. 5th DCA 2015) (citing Popple v. State, 626 So. 2d 185, 186 (Fla. 1993)). In a consensual encounter, a citizen may either voluntarily comply with a police officer's requests or choose to ignore them. Because the citizen is free to leave, consensual encounters involve only minimal police contact and do not intrude on any constitutionally protected interest under the Fourth Amendment. Blake v. State, 939 So. 2d 192,194 (Fla. 5th DCA 2006) (quoting Popple, 626 So. 2d at 186); State v. Simons, 549 So. 2d 785, 786 (Fla. 2d DCA 1989); see also State v. Meachum, 196 So. 3d 496, 498 (Fla. 1st DCA 2016) ("Consensual encounters do not require any suspicion of criminal activity, and 'police officers do not violate the prohibition on unreasonable searches and seizures simply by approaching individuals on the street and asking them to answer a few questions.'" (quoting Caldwell v. State, 41 So. 3d 188, 196 (Fla. 2010))); Brown v. State, 577 So. 2d 708, 709 (Fla. 2d DCA 1991) (noting that an officer needs no founded suspicion to approach a parked vehicle and talk to its occupants). During an investigatory stop, "a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime." Blake, 939 So. 2d at 194-95 (quoting Popple, 626 So. 2d at 186). "In order not to violate a citizen's Fourth Amendment rights, an investigatory stop requires a well-founded,

7

articulable suspicion of criminal activity." Id. Arrests require the police to have probable cause to believe that a crime has been committed or is being committed. Simons, 549 So. 2d at 786.

As the majority outlines, the encounter in this case occurred sometime after Appellee slammed his apartment door in the officers' faces after they knocked on it while responding to a noise complaint.[1] The following relevant facts, which occurred after the initial encounter, were summarized in the trial court's order:

> The officers then returned to their vehicle, and upon seeing Defendant and a female leaving the apartment in a car they followed the Defendant's vehicle to a fast-food restaurant where the Defendant entered into the drive-thru lane. The officers parked their marked patrol vehicle in a parking space at least sixty feet away and then walked over to the Defendant's car while it was still in the drive thru lane behind a car. Officer Rogers walked up to the driver's side of the vehicle "to ask the Defendant why he slammed the door in his face," while the other officer walked behind the vehicle and stood on the passenger side. The Defendant's car windows were down and at no time did the officers command the occupants to exit the vehicle. While standing at the passenger's side of the vehicle, Officer Fink, noticed the Defendant's feet "shuffling", and then noticed a firearm near his feet. Officer Fink informed Officer Rogers about the firearm and a bag of suspected cannabis, at which time the Defendant was arrested for carrying a concealed firearm.

On this evidence, the trial court determined the officers had illegally stopped Appellee and blocked his ability to terminate the encounter. See Simons, 549 So. 2d at 787 (noting that "a significant identifying characteristic of a police encounter is that the officer cannot hinder or restrict the person's freedom to leave . . . ." (citing Lightbourne v.

---

[1] The officers testified that when Appellee opened the door, they smelled the odor of burnt cannabis coming from the apartment.

<u>State</u>, 438 So. 2d 380 (Fla. 1983), <u>cert. denied</u>, 465 US 1051 (1984))). The trial court reasoned:

> Upon leaving [the apartment], 'the officers were required to have reasonable articulable suspicion that criminal activity was afoot in order to conduct a legal stop of the Defendant's vehicle. In order to determine whether the officers' actions constituted more than a consensual encounter, an appropriate inquiry is whether a reasonable person standing in the Defendant's shoes would feel free to terminate the encounter. Here, testimony by the Defendant and officers provided that Defendant pulled into the drive-thru lane behind another car, that one officer walked behind his vehicle and then each officer stood on each side of the car. The Defendant could not pull forward because of the car in front of him, and could not back up because his side mirrors would have hit the officers.

Considering all the circumstances, I cannot conclude that the conduct of these two officers would lead Appellee to reasonably believe he was not free to terminate the encounter.[2] <u>See</u> <u>State v. Kasparian</u>, 937 So. 2d 1273, 1275 (Fla. 4th DCA 2006) ("To determine whether there has been a consensual encounter, a court must consider all of the circumstances surrounding the encounter to determine whether the conduct of police officers would have communicated to a reasonable person that the person was not free to decline the officers' request or otherwise terminate the encounter." (citing <u>State v. Livingston</u>, 681 So. 2d 762, 764 (Fla. 2d DCA 1996))). The encounter at the apartment was relatively uneventful. Although, by happenstance, the officers noticed Appellee leave[3] and decided to follow him, nothing in the record suggests Appellee knew he was

---

[2] Appellee certainly understood he could terminate the initial encounter when he slammed the door on the officers. In a similar vein, he simply could have rolled up his car window to signal to the officers that he did not wish to talk.

[3] It is reasonable to conclude Appellee waited until he thought the officers were gone before deciding to leave to get food.

9

being followed.[4] Appellee pulled into the drive-thru lane, behind another car, with his windows down. No car was behind him. The officers parked in a space sixty feet away and approached Appellee's car on foot from the side. The officers did not threaten Appellee in any way, order him out of the car, block him in, or otherwise try to intimidate him. One officer simply asked why Appellee slammed the door in his face.

The trial court's finding that Appellee would have hit the officers with his mirrors if he had attempted to leave is speculative, at best, and is simply not supported by the evidence.[5] See Meachum, 196 So. 3d at 497 (finding no evidence officers blocked defendant's egress from parking lot where one officer approached the driver's side of the vehicle and the other went to the rear to obtain tag information). Without more, no competent, substantial evidence exists in the record to suggest Appellee's freedom to back up and leave, or otherwise terminate the encounter, was hindered or restricted by the police or anything else. Therefore, I would reverse the trial court's order granting Appellee's motion to suppress.

---

[4] Despite the majority's attempt to paint a different picture, there was no evidence presented at the hearing to suggest the officers were following directly behind Appellee or that the Appellee saw them. It was well after midnight and the patrol car's lights and siren were not activated.

[5] While the majority discounts this finding, it appears to be the basis for the trial court's ruling.

10