*176 BERGER, J.,
dissenting.
This case involves the suppression of a firearm, found in plain view, during a police encounter in the drive-thru lane at a fast-food restaurant. The trial court suppressed the firearm after concluding the officers had unlawfully detained Appellee. In my view, this conclusion is not supported by the evidence. Accordingly, I dissent.
There are three types of police/citizen encounters: (1) consensual encounters; (2) investigatory stops; and (3) arrests. State v. Bullock, 164 So.3d 701, 704 (Fla. 5th DCA 2015) (citing Popple v. State, 626 So.2d 185, 186 (Fla. 1993)). In a consensual encounter, a citizen may either voluntarily comply with a police officer’s requests or choose to ignore them. Because the citizen is free to leave, consensual encounters involve only minimal police contact and do not intrude on any constitutionally protected interest under the Fourth Amendment. Blake v. State, 939 So.2d 192, 194 (Fla. 5th DCA 2006) (quoting Popple, 626 So.2d at 186); State v. Simons, 549 So.2d 785, 786 (Fla. 2d DCA 1989); see also State v. Meachum, 196 So.3d 496, 498 (Fla. 1st DCA 2016) (“Consensual encounters do not require any suspicion of criminal activity, and ’police officers do not violate the prohibition on unreasonable searches and seizures simply by approaching individuals on the street and asking them to answer a few questions.’” (quoting Caldwell v. State, 41 So.3d 188, 196 (Fla. 2010))); Brown v. State, 577 So.2d 708, 709 (Fla. 2d DCA 1991) (noting that an officer needs no founded suspicion to approach a parked vehicle and talk to its occupants). During an investigatory stop, “a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime.” Blake, 939 So.2d at 194-95 (quoting Popple, 626 So.2d at 186). “In order not to violate a citizen’s Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity.” Id. Arrests require the police to have probable cause to believe that a crime has been committed or is being committed. Simons, 549 So.2d at 786.
As the majority outlines, the encounter in this case occurred sometime after Ap-pellee slammed his apartment door in the officers’ faces after they knocked on it while responding to a noise complaint.[1] The following relevant facts, which occurred after the initial encounter, were summarized in the trial court’s order:
The officers then returned to their vehicle, and upon seeing Defendant and a female leaving the apartment in a car they followed the Defendant’s vehicle to a fast-food restaurant where the Defendant entered into the drive-thru lane. The officers parked their marked patrol vehicle in a parking space at least sixty feet away and then walked over to the Defendant’s car while it was still in the drive thru lane behind a car. Officer Rogers walked up to the driver’s side of the vehicle “to ask the Defendant why he slammed the door in his face,” while the other officer walked behind the vehicle and stood on the passenger side. The Defendant’s car windows were down and at no time did the officers command the occupants to exit the vehicle. While standing at the passenger’s side of the vehicle, Officer Fink, noticed the Defendant’s feet “shuffling”, and then noticed a firearm near his feet. Officer Fink informed Officer Rogers about the fire *177 arm and a bag of suspected cannabis, at which time the Defendant was arrested for carrying a concealed firearm.
On this evidence, the trial court determined the officers had illegally stopped Appellee and blocked his ability to terminate the encounter. See Simons, 549 So.2d at 787 (noting that “a significant identifying characteristic of a police encounter is that the officer cannot hinder or restrict the person’s freedom to leave .... ” (citing Lightbourne v. State, 438 So.2d 380 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984))). The trial court reasoned:
Upon leaving [the apartment], ‘the officers were required to have reasonable articulable suspicion that criminal activity was afoot in order to conduct a legal stop of the Defendant’s vehicle. In order to determine whether the officers’ actions constituted more than a consensual encounter, an appropriate inquiry is whether a reasonable person standing in the Defendant’s shoes would feel free to terminate the encounter. Here, testimony by the Defendant and officers provided that Defendant pulled into the drive-thru lane behind another car, that one officer walked behind his vehicle and then each officer stood on each side of the car. The Defendant could not pull forward because of the car in front of him, and could not back up because his side mirrors would have hit the officers.
Considering all the circumstances, I cannot conclude that the conduct of these two officers would lead Appellee to reasonably believe he was not free to terminate the encounter.[2] See State v. Rasparian, 937 So.2d 1273, 1275 (Fla. 4th DCA 2006) (“To determine whether there has been a consensual encounter, a court must consider all of the circumstances surrounding the encounter to determine whether the conduct of police officers would have communicated to a reasonable person that the person was not free to decline the officers’ request or otherwise terminate the encounter.” (citing State v. Livingston, 681 So.2d 762, 764 (Fla. 2d DCA 1996))). The encounter at the apartment was relatively uneventful. Although, by happenstance, the officers noticed Appellee leave[3] and decided to follow him, nothing in the record suggests Appellee knew he was being followed.[4] Appellee pulled into the drive-thru lane, behind another car, with his windows down. No car was behind him. The officers parked in a space sixty feet away and approached Appellee’s car on foot from the side. The officers did not threaten Appellee in any way, order him out of the car, block him in, or otherwise try to intimidate him. One officer simply asked why Appellee slammed the door in his face.
The trial court’s finding that Appellee would have hit the officers with his mirrors if he had attempted to leave is speculative, at best, and is simply not supported by the evidence.[5] See Meachum, 196 So.3d at 497 *178 (finding no evidence officers blocked defendant’s egress from parking lot where one officer approached the driver’s side of the vehicle and the other went to the rear to obtain tag information). Without more, no competent, substantial evidence exists in the record to suggest Appellee’s freedom to back up and leave, or otherwise terminate the encounter, was hindered or restricted by the police or anything else. Therefore, I would reverse the trial court’s order granting Appellee’s motion to suppress.

. The officers testified that when Appellee opened the door, they smelled the odor of burnt cannabis coming from the apartment.

. Appellee certainly understood he could terminate the initial encounter when he slammed the door on the officers. In a similar vein, he simply could have rolled up his car window to signal to the officers that he did not wish to talk.

. It is reasonable to conclude Appellee waited until he thought the officers were gone before deciding to leave to get food.

. Despite the majority’s attempt to paint a different picture, there was no evidence presented at the hearing to suggest the officers were following directly behind Appellee or that the Appellee saw them. It was well after midnight and the patrol car’s lights and siren were not activated.

.While the majority discounts this finding, it appears to be the basis for the trial court’s ruling.