426 So.2d 1287 (1983)
STATE of Florida, Appellant,
v.
Ronald BROCK, Appellee.
STATE of Florida, Appellant,
v.
Harold R. PHILLIPS, Appellee.
Nos. AM-297, AM-298.
District Court of Appeal of Florida, First District.
February 22, 1983.
Rehearing Denied March 11, 1983.
Jim Smith, Atty. Gen., and Barbara Ann Butler, Asst. Atty. Gen., Jacksonville, for appellant.
Louis O. Frost, Jr., Public Defender, and James T. Miller, Asst. Public Defender, Jacksonville, for appellees.
SHIVERS, Judge.
The State appeals the orders of the trial court granting appellees' motions to suppress physical evidence. Appellant argues that on the facts of this case the officer involved possessed a reasonable suspicion to justify his stop of appellees' vehicle and thereby violated neither constitutional standards nor section 901.151, Fla. Stat. (1981). We agree and reverse.
At approximately 10:30 P.M. on January 5, 1982, Jacksonville Sheriff's Officer Price was in his vehicle on routine patrol of the *1288 downtown area. The officer was flagged down by a man and woman who, in an excited manner, stated, "Stop that car. It's a stolen car." The couple were pointing at a pack of cars down the street but Officer Price did not see the car to which they were pointing. Officer Price responded, "What kind of car?", and the couple responded, "older model yellow Toyota." Officer Price had not seen this couple before. His entire conversation with them lasted approximately 10 to 15 seconds. Officer Price proceeded immediately in his vehicle in the direction pointed out by the couple, believing that if the vehicle was not found immediately the chances of recovering it would be missed. He instructed the couple to remain at the intersection. Officer Price eventually came upon an older model yellow Toyota. He did not stop the vehicle immediately, but radioed the tag number to the dispatcher. A check with the National Crime Information Center (NCIC) computer revealed that the vehicle bearing that tag number had not been reported stolen. Officer Price, however, felt that the vehicle might have been stolen so recently as to not have been entered into the computer. Therefore, he stopped the Toyota.
The driver of the Toyota was Appellee Brock, and Appellee Phillips was the passenger. A routine NCIC check on appellees' identities revealed outstanding arrest warrants for both appellees, and they were subsequently arrested pursuant thereto. Appellees were placed in the squad car and the Toyota was searched. A blue zippered bank-type bag was retrieved from the floorboard of the passenger side of the vehicle. Inside the bag were papers bearing the name of Phillips and 28 tinfoil packets containing cocaine. Upon the foregoing facts, the trial court ordered that the cocaine be suppressed.
The critical issue in this case concerns the validity of the initial stop by Officer Price. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Court stated, "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Id. at 22, 88 S.Ct. at 1880. In judging the reasonableness of a particular search or seizure under the fourth amendment the Court said, "[I]t is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Id. at 21-22, 88 S.Ct. at 1879-1880. The ruling in Terry precipitated the passage of the Florida Stop and Frisk Law, section 901.151, Fla. Stat.[1]State v. Hendry, 309 So.2d 61 (Fla. 2d DCA 1975). Under this statute, which imposes no higher standard than that *1289 of the fourth amendment,[2] an officer must have a reasonable, well-founded suspicion of the presence of criminal activity. Taylor v. State, 384 So.2d 1310 (Fla. 2d DCA 1980), rev. denied, 392 So.2d 1380 (Fla. 1980). The officer's suspicion must be based on observed facts interpreted in light of the officer's knowledge and experience. Id. To justify a stop, a police officer must be able to point to specific and articulable facts which, taken together with rational inferences from these facts, reasonably justify the stop. State v. Webb, 398 So.2d 820 (Fla. 1981). Whether a valid stop may be based on an anonymous tip depends upon the facts and circumstances. "A valid stop and frisk may be based on information obtained from an anonymous tipster if that information appears sufficiently reliable because of the surrounding circumstances or the nature of the information given in the tip itself." Hetland v. State, 387 So.2d 963 (Fla. 1980).
In applying the foregoing principles to the facts of the case at bar, we first note that the tip here is substantially anonymous, but it is not totally so. While it is true that Officer Price was not familiar with the couple who hailed him on the street and might never have seen them again, the couple were physically within Officer Price's presence. This is not the case of a faceless, totally anonymous telephone tip. Here the tipsters were available to provide further information, although Officer Price chose not to pursue this option.[3] The physical presence of the tipsters also enabled Officer Price to observe their demeanor. Even treating the information obtained by Officer Price as an anonymous tip, however, we believe that the officer acted reasonably in this situation.
Although the information given in the tip was sparse, we believe that the specificity and urgency of the tip constituted indicia of reliability sufficient to justify a reasonable suspicion. The description "older model yellow Toyota" might be vague if an entire city were to be searched for the vehicle, but it was sufficient to enable the officer in this situation to distinguish the vehicle from the other cars in the pack in which it was traveling. Thus, the tip was very specific under the circumstances. Furthermore, the exigency of the situation is obvious. Officer Price testified that he believed the vehicle would probably escape unless he took immediate action. Although the NCIC computer check did not corroborate the information given in the tip, the officer testified that recently stolen vehicles are often not listed in the computer. Given the exigent nature of the tip itself, we think the officer could reasonably have believed that the vehicle was such a recently stolen one. We therefore hold that the stop involved sub judice was valid. The intrusion was minimal, and the police officer was able to point to specific and articulable facts which, taken together with rational inferences therefrom, reasonably warranted that intrusion.
Having found the initial stop to be valid, we hold that the subsequent arrest and *1290 search were also valid. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Accordingly, the orders below granting appellees' motions to suppress are reversed and the cause remanded for further proceedings.
REVERSED and REMANDED.
WENTWORTH and JOANOS, JJ., concur.
NOTES
[1] Section 901.151, Fla. Stat. (1981) reads as follows:

(1) This section may be known and cited as the "Florida Stop and Frisk Law."
(2) Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, he may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense.
(3) No person shall be temporarily detained under the provisions of subsection (2) longer than is reasonably necessary to effect the purposes of that subsection. Such temporary detention shall not extend beyond the place where it was first effected or the immediate vicinity thereof.
(4) If at any time after the onset of the temporary detention authorized by subsection (2), probable cause for arrest of person shall appear, the person shall be arrested. If, after an inquiry into the circumstances which prompted the temporary detention, no probable cause for the arrest of the person shall appear, he shall be released.
(5) Whenever any law enforcement officer authorized to detain temporarily any person under the provisions of subsection (2) has probable cause to believe that any person whom he has temporarily detained, or is about to detain temporarily, is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person, he may search such person so temporarily detained only to the extent necessary to disclose, and for the purpose of disclosing, the presence of such weapon. If such a search discloses such a weapon or any evidence of a criminal offense it may be seized.
(6) No evidence seized by a law enforcement officer in any search under this section shall be admissible against any person in any court of this state or political subdivision thereof unless the search which disclosed its existence was authorized by and conducted in compliance with the provisions of subsections (2)-(5).
[2] In State v. Webb, 398 So.2d 820 (Fla. 1981), the court stated, "Applying these rules of statutory construction to section 901.151, Florida Stop and Frisk Law, there is no doubt that the legislature intended to adopt the federal standards for stop and frisk, and not any stricter standards." Id. at 825.
[3] When questioned by defense counsel and the court regarding the lack of information obtained from the couple, Officer Price stated, "I knew if I didn't leave them then and find it,  that they could tell me all of this stuff later. I knew I had to leave then and get the car or I wouldn't be able to catch it."