PER CURIAM.
 

 Dwight Leon Hudson appeals his conviction and sentence for felony possession of a concealed weapon. After an off-duty police officer stopped Hudson, he discovered that Hudson had a “switchblade type knife” in his pants’ pocket. Hudson moved
 
 *949
 
 to suppress the knife evidence below, arguing that the stop was not valid. The trial court, however, denied the motion, and Hudson entered a no contest plea reserving the right to challenge the dispositive ruling. Because we conclude that the officer possessed the reasonable suspicion necessary to stop Hudson, we affirm.
 

 At the hearing on Hudson’s motion to suppress, the arresting officer testified that when he stopped Hudson, he was off duty but working as a security officer in the parking lot of Tropicana Field. On the day of the arrest, Tropicana Field and its adjacent parking lots were being used by high schools to host graduation ceremonies. The officer testified that while working in lot 7 on the east side of the stadium, he received a radio message that a middle-aged black male was burglarizing vehicles in that lot. He immediately saw an individual that met this description. The man, who was later identified as Hudson, was dressed in blue jeans and a T-shirt and was walking hurriedly away from the stadium carrying two nylon duffle bags.
 
 [1]
 
 The officer immediately stopped Hudson and explained the reasons for the stop.
 

 As the officer was speaking with Hudson, he noticed several bulges in Hudson’s pants’ pockets. The officer advised that he was going to do a patdown search, and upon determining that the bulge in the rear pocket was hard, he asked what was in the pocket. Hudson responded that the object was a knife, and the officer removed it. The officer noted that the knife “was a spring-loaded, like a switchblade type knife.” The officer placed Hudson under arrest for carrying a concealed weapon.
 

 Hudson argued below that the officer was responding to an anonymous tip which included only a vague description and that the officer had no other corroboration that Hudson was the subject described in the radio message. He pointed out that the officer did not see Hudson looking into cars or doing anything that would suggest criminal conduct. Based on the officer’s testimony, Hudson argued, the officer lacked the reasonable suspicion required for a Terry
 
 [2]
 
 stop.
 
 See generally Popple v. State,
 
 626 So.2d 185, 186 (Fla.1993) (“[A] police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime.”). The trial court disagreed and denied Hudson’s motion.
 

 On appeal, Hudson argues that
 
 Baptiste v. State,
 
 995 So.2d 285 (Fla.2008), requires reversal. We do not agree because that case is factually distinguishable from the circumstances surrounding Hudson’s stop. In
 
 Baptiste,
 
 an officer received a call informing him that an anonymous caller had advised that a black male wearing a white T-shirt and blue-jean shorts had waved a firearm in a specified location. The first officer to confront Baptiste stopped him at gunpoint about four houses away from the specified location. The State presented no other evidence of criminal conduct by Baptiste; he was merely a black male dressed in a white T-shirt and blue-jean shorts, walking down the street in the general area of the reported criminal conduct. Based on these facts, the supreme court concluded as follows:
 

 [W]hen the officer arrived on scene, she was only able to corroborate innocent
 
 *950
 
 details (i.e., Baptiste’s race, Ms attire, and his location near the address identified in the 911 call). Further, Baptiste
 
 was not
 
 engaged in any unlawful acts, unusual conduct, or suspicious behavior; he was merely walking down the street. Since the tip was reliable solely in its tendency to identify a determinate person and not in its assertion of illegality, we conclude that ... the police here lacked reasonable suspicion to seize Baptiste at gunpoint.
 

 Id.
 
 at 296 (citation and internal quotation marks omitted).
 
 [3]
 

 The tip in the instant case was similar to the one in
 
 Baptiste
 
 in that it was vague and offered nothing to suggest predictive behavior that could be corroborated prior to the stop.
 
 See Baptiste,
 
 995 So.2d at 292 (“[F]or an anonymous tip to provide a reasonable basis for a
 
 Terry
 
 stop, the tip must contain specific details which are then
 
 corroborated by independent police investigation.”).
 
 Nevertheless, a stop is lawful if the totality of the circumstances provided law enforcement with the required reasonable suspicion.
 

 “Reasonable suspicion ... is dependent upon both the content of information possessed by police and its degree of reliability. Both factors' — quantity and quality — are considered in the totality of the circumstances — the whole picture[ ] that must be taken into account when evaluating whether there is reasonable suspicion.”
 
 Id.
 
 at 291 (internal quotation marks omitted) (quoting
 
 Alabama v. White,
 
 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). “Even though an anonymous tip may not provide predictive information or the precise basis for the tipster’s knowledge, subsequent
 
 observations
 
 of a suspect who matches the description given may afford officers reasonable suspicion to seize that suspect.”
 
 Id.
 
 at 297. The suspicion is reasonable if it is “based upon specific and articulable facts, and the rational inferences that may be drawn from those facts.”
 
 Id.
 
 at 290.
 

 Here, while the tip itself was insufficient to provide reasonable suspicion, Hudson’s observable conduct in the parking lot after the officer received the radio message provided the necessary reasonable suspicion to initially detain him. Upon receiving the call reporting criminal conduct, the officer immediately saw Hudson, who matched the vague description provided by the tip. He was carrying two duffle bags and hurriedly walking away from the stadium. Based on the direction of his travel, the items in his hands, and the hurried nature of his walk, the officer could draw a reasonable inference that Hudson was not in the parking lot to attend a graduation ceremony. Hudson’s presence in the parking lot for some non-stadium-related activity, coupled with the information that a person resembling Hudson had been seen burglarizing cars in that very lot, were “specific and articulable
 
 *951
 
 facts” from which the officer could conclude that a reasonable suspicion existed to justify the stop of Hudson.
 

 As such, the trial court did not err in denying Hudson’s motion to suppress, and we affirm Hudson’s judgment and sentence on that basis.
 

 Affirmed.
 

 DAVIS, KELLY, and LaROSE, JJ., Concur.
 

 [1]
 

 . The officer testified that parking lot 7 was on the east side of the stadium and that the subject was walking east. The inference from the testimony is that Hudson was walking away from the stadium.
 

 [2]
 

 .
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
 

 [3]
 

 . We note that
 
 Baptiste
 
 could be read to also draw a distinction between the type of Terry stop present in this case and the “gunpoint seizure” executed by the police to detain Baptiste.
 
 See Baptiste,
 
 995 So.2d at 301 (“Our holding today should
 
 not
 
 be interpreted to imply that, upon receipt of an anonymous call ... officers cannot or should not ... approach that individual to further investigate the allegation and the circumstances. Rather, we merely hold that when investigating an anonymous tip, officers who are unable to independently corroborate criminal activity
 
 may not initiate a gunpoint seizure
 
 based upon confirmation of only innocent details ....” (underline emphasis added)). Although the officer here did not draw his firearm, we do not find it necessary to address this possible interpretation of
 
 Baptiste
 
 in resolving Hudson's claim because we conclude that the officer here had the necessary reasonable suspicion to initiate the stop with or without use of a firearm.