VAN NORTWICK, J.
Gerome Berry appeals his convictions for possession of cocaine, possession of cocaine with intent to sell, and resisting a law enforcement officer without violence, arguing that the trial court erred in denying his motion to suppress the crack cocaine and U.S. currency seized from him during a warrantless search. It is clear from this record that neither the arresting officer nor his fellow officer observed any suspicious behavior to confirm the reliability of the information given by a face-to-face anonymous tipster. Further, there were no other factors present sufficient to give the arresting officer reasonable suspicion to justify the investigatory stop which led to appellant’s arrest. Accordingly, we are constrained to reverse. Because of this disposition, we do not address appellant’s constitutional challenge to section 893.13, Florida Statutes. See Flagg v. State, 74 So.3d 138 (Fla. 1st DCA 2011).
At 9:30 a.m. on October 9, 2009, Agriculture Law Enforcement Officer Allen was in a convenience store in the town of Hilli-ard. Inside the store, Allen was approached by a female in her early 30s who advised him that a black male was selling crack cocaine out of a small bag on a nearby corner of Orange Street. She said this person was wearing blue jean shorts, a white shirt, and a black stocking on his head. Allen called Nassau County Sheriffs Deputy Murray, who was on duty that day in the area, and relayed this information. Allen said he would wait at the convenience store in case the deputy needed assistance. As he was waiting, Allen observed a black male wearing a white shirt, blue shorts and a black stocking hat walk around the corner of the convenience store. This individual appeared to have an object in his hand although Allen “couldn’t necessarily say that it was a bag.” After he made eye contact with Officer Allen, the individual turned and walked into the woods adjacent to the convenience store. He returned shortly thereafter with nothing in his hands. His pants were unzipped and he told Allen that he had gone into the woods to relieve himself. He walked past the officer and headed in the direction of Orange Street.
Deputy Murray contacted Officer Allen and advised him that he was on the street corner, but a black male fitting the description was not there. Officer Allen advised Deputy Murray that the suspect appeared to be walking in that direction. Deputy Murray encountered appellant walking down the road “in a nervous pace” continually looking behind as he walked. The deputy pulled in behind appellant and activated his blue lights. Appellant resisted the subsequent pat down, the deputy arrested him for resisting an officer without violence, and the subsequent search revealed narcotics in a potato chip bag in appellant’s pocket.
At the suppression hearing, Officer Allen testified that he did not know the woman who gave him the tip and that she expressly advised that she did not want to give her name and that she wanted to remain anonymous. She did not advise him how she knew that appellant possessed cocaine or how she knew that he was selling cocaine. Officer Allen did not *598 testify with respect to the credibility of the face-to-face tipster. Further, he offered his personal opinion that he “didn’t observe [appellant] engage in any suspicious or criminal activity.” The trial court summarily denied the motion to suppress. Following a trial, the jury found appellant guilty as charged.
In reviewing the order denying the motion to suppress, this court must view the evidence and the reasonable inferences and deductions therefrom in a light most favorable to sustaining the trial court’s ruling. Pagan v. State, 830 So.2d 792, 806 (Fla.2002). We review de novo the trial court’s application of the law to the facts to determine whether Deputy Murray lawfully conducted an investigatory stop. Robinson v. State, 885 So.2d 951, 958 (Fla. 1st DCA 2004).
To justify a Terry[1] stop, a law enforcement officer must have a well-founded, articulable suspicion that the person detained has committed, is committing, or is about to commit a crime. § 901.151(2), Fla. Stat. (2009); Popple v. State, 626 So.2d 185, 186 (Fla.1993). Unlike in Terry, where the officer’s own observations provided a well-founded, articu-lable suspicion, the instant ease involves information from an anonymous third party in the form of a tip. The issue presented here is whether this face-to-face tip was sufficient to provide the requisite reasonable suspicion.
“In analyzing whether third-party information can provide the requisite reasonable suspicion, courts have looked to the reliability of the informant as well as the reliability of the information provided.” D.P. v. State, 65 So.3d 123, 127 (Fla. 3d DCA 2011). “[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.” Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). A court should consider the “totality of the circumstances” in undertaking this analysis. Id.
The spectrum of reliability of a tip ranges from the “anonymous, unknown tipster whose assertions of criminal activity typically cannot be verified and thus require independent corroboration,” which has relatively low reliability, to the relatively high reliability of a tip from the “citizen-informer crime victim whose motivation in reporting illegality is the promotion of justice and public safety rather than financial gain, and who can be held accountable for the accuracy of the information given.” State v. DeLuca, 40 So.3d 120, 124 (Fla. 1st DCA 2010); see also Baptiste v. State, 995 So.2d 285, 291-92 (Fla.2008); State v. Evans, 692 So.2d 216, 219 (Fla. 4th DCA 1997). In between these types of tips is the face-to-face anonymous tipster whose identity cannot be ascertained, the face-to-face anonymous tipster whose identity is ascertainable, and the paid informant, among others. “One simple rule” does not apply to every situation. Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
Here, we must determine whether the face-to-face tip was more like a truly anonymous tip or more like a citizen informant tip. An anonymous tip requires that the information be “sufficiently corroborated” by the officer to constitute reasonable suspicion because the tipster’s veracity, reliability, and basis of knowledge are typically unknown. State v. Evans, 692 So.2d at 218; see also State v. Maynard, 783 So.2d 226, 230 (Fla.2001) (applying the analysis of Evans). By comparison, a citizen informant is one who *599 observes criminal conduct and reports it, along with his or her identity, to the police. A tip from a citizen informant is sufficient by itself to provide law enforcement with reasonable suspicion to conduct a Terry stop. Maynard, 783 So.2d at 228.
In Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), the United States Supreme Court provided an analysis for determining whether an anonymous tip was sufficiently reliable to support a Terry stop. In J.L., an anonymous caller reported to the police that “a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun.” Id. at 268, 120 S.Ct. 1375. When the officers arrived at the bus stop within minutes, they saw three black males, one of whom, J.L., was wearing a plaid shirt. J.L. was frisked and a firearm seized from his pocket. Apart from the anonymous telephone tip, the officers had no reason to suspect J.L. of illegal conduct. The Court ruled that the anonymous tip lacked the indicia of reliability because it “provided no predictive information and therefore left the police without means to test the informant’s knowledge or credibility.” Id. at 271, 120 S.Ct. 1375. “All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L.” Id. The court added that “[t]he mere fact that a tip, if true, would describe illegal activity does not mean that the police may make a Terry stop without meeting the reliability requirement.” Id. at 273 n. *, 120 S.Ct. 1375.
Turning to the tip in the case under review, appellant contends it was anonymous because, even though the tipster had a face-to-face encounter with the officer, she did not give him her name, phone number, or any information with which to contact her. Appellant urges us to follow the reasoning in McKelvin v. State, 53 So.3d 401 (Fla. 4th DCA 2011), which appellant contends is factually similar. In McKelvin, the unidentified source approached police alleging she witnessed “narcotic activity” via “hand-to-hand transactions” from a vehicle. She provided police with a detailed description of the vehicle, the tag number, the race, the height, age, and weight of the suspect along with information that he would be going to a specific hotel. The source wished to remain anonymous and, as a result, officers never obtained the informant’s name, phone number or address. Id. at 403. In reversing a denial of a motion to suppress, the McKelvin court explained:
The indicia of reliability typically attributed to face-to-face encounters between police officers and informants do not exist in the present case where the police have no contact information for the informant and no way to locate him/her otherwise. Further, in the instant case, the officers did not know the motive of the informant. S/he could have been providing the information for his/her own pecuniary gain, may have had a falling out with McKelvin or may have even been acting on behalf of a competing drug dealer.
Id. at 405. Because the police in McKel-vin had acted without corroboration of the tip, the court held that the trial court erred in denying the motion to suppress.
On the other hand, the State contends that the trial court here properly denied the motion to suppress because the stop of appellant was based upon information provided by citizen-informant. Relying upon D.P. v. State, the State submits that a person who approaches the police face-to-face to report a crime is not anonymous, but is more analogous to a citizen-informant. In D.P., a woman approached an *600 officer on patrol. The officer described the woman as very nervous and fearful and said that her hands were shaking and she was yelling. The woman pointed directly at D.P. and told the officer “he just pointed a gun at me, and he has a gun.” 65 So.3d at 126. The officer testified that he believed the young woman was credible, given her fearful state and outward appearance. Although the officer could have obtained the woman’s identity, he did not do so. He approached D.P. to verify the information he had just been provided, conducted a pat-down search of D.P.’s outer clothing, and discovered and removed a firearm. After taking D.P. into custody, Officer Tate discovered that the woman had left. In affirming the denial of a motion to suppress, the Third District explained “ ‘[a] face-to-face anonymous tip is presumed to be inherently more reliable than an anonymous telephone tip because the officers receiving the information have an opportunity to observe the demeanor and perceived credibility of the informant.’” 65 So.3d at 130 (quoting United States v. Heard, 367 F.3d 1275, 1279 (11th Cir.2004)). The court observed that “[b]y providing this information in the presence of D.P. himself, the informant exposed herself to the risk of reprisal (perceived or real) from D.P. or others who were present during the encounter.” Id. at 129.
We find D.P. distinguishable. Although the tipster in the case before us made face-to-face contact with Officer Allen, she stated that she wanted to remain anonymous. Her identity was unknown to the officer and was not readily ascertainable as the officer could not learn her name through later investigation. Unlike D.P., here the information was not provided in appellant’s presence, an indicia of reliability, and Officer Allen did not testify that he engaged in a credibility determination.
The State also asserts this case is controlled by this court’s decision in State v. Brock, 426 So.2d 1287 (Fla. 1st DCA 1983). In Brock, we held that while the tip was anonymous, it was not totally so since, even though the officer did not know the couple’s names who reported the stolen vehicle, they were physically in his presence and this, with the specificity and urgency of the tip, constituted indicia of reliability sufficient to justify a reasonable suspicion. Id. at 1289.
This case is clearly distinguishable from Brock. ' There, the court found that “the tipsters were available to provide further information, although Officer Price chose not to pursue this option.” Id. The court was further persuaded by the urgency of the situation in that the officer had to immediately respond to the tip or “the vehicle would probably escape” and “the exigency of the situation [was] obvious.” Id. These factors are not present in the case before us. Under the facts of this case, it cannot be said that the informant bore a greater resemblance to a citizen-informant than to a truly anonymous tipster.
We find the reasoning in McKelvin persuasive. “The indicia of reliability typically attributed to face-to-face encounters between police officers and informants [does] not exist in the present case where the police have no contact information for the informant and no way to locate [her] otherwise.” McKelvin, 53 So.3d at 405. As in McKelvin, the officers here did not know the motive of the informant. “Without contact information or some other way to locate the informant if necessary, the informant in the present case is no different than an anonymous informant who provides detailed information over the phone to the police dispatch.” Id.; see also Solino v. State, 763 So.2d 1249 (Fla. 4th DCA *601 2000); State v. Rewis, 722 So.2d 863 (Fla. 5th DCA 1998).
Finding that the tip in this case is at the low end of the reliability spectrum, this court must then determine whether the police had sufficient corroboration of the tip to form the reasonable suspicion necessary to stop appellant. We do not find corroborating facts in this record. Neither officer saw the defendant at the street corner where the tipster alleged he was selling drugs or witnessed illegal or suspicious activity on the part of appellant. Though Deputy Murray witnessed appellant walking at a nervous pace, “behavior, which may be suspicious but not demonstrably or conceivably criminal, is not sufficient to establish a founded suspicion, even in a high crime area.” Hills v. State, 629 So.2d 152, 156 (Fla. 1st DCA 1993). Appellant did not make a furtive or potentially dangerous movement. Id. Even if appellant’s fast walking could be construed as flight from police, “flight alone is not a proper basis for a founded suspicion of criminal activity as would justify ... an investigatory stop.” Robinson, 885 So.2d at 954.
Further, the case under review possesses none of the other factors necessary to create reasonable suspicion. The incident occurred at 9:30 in the morning. There was no testimony this was a high crime area or even that drug crimes had occurred there in the past. There was nothing unusual about appellant walking down the street. Compare Parker v. State, 18 So.3d 555, 559 (Fla. 1st DCA 2008) (holding that officer had reasonable suspicion to conduct an investigatory stop after the defendant began to run given the time of night, emptiness of the street and recent occurrence of domestic battery in area); Sinclair v. State, 816 So.2d 149, 150 (Fla. 1st DCA 2002) (holding that officer had reasonable suspicion to make a stop when, at 2:00 a.m. following a complaint of a prowler, suspect twice changed directions away from police when an attempt to talk to him was made); Jenkins v. State, 685 So.2d 918 (Fla. 1st DCA 1996) (holding that, where suspect was riding a bike at 12:55 a.m. carrying a large parcel in a primarily business district with all businesses closed in an area where there had been recent burglaries, and suspect stood up on bike to pedal faster, continually looking back at the patrol car, upon the totality of the circumstances the investigatory stop was appropriate).
In short, when the reliability of the tip and the lack of corroborating factors are considered, we find that the totality of the circumstances demonstrates that Deputy Murray did not have a reasonable suspicion of illegal activity sufficient to conduct a Terry stop.
REVERSED.
BENTON, C.J., concurs with written opinion, and SWANSON, J., dissents with written opinion.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).