IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

MATTHEW A. TOBIN,

      Appellant,

v.

STATE OF FLORIDA,

      Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-2293

Opinion filed September 10, 2014.

An appeal from the Circuit Court for Okaloosa County.
Michael A. Flowers, Judge.

Bert Moore, Crestview, for Appellant.

Pamela Jo Bondi, Attorney General, and Kristen Bonjour and Trisha Meggs Pate, Assistant Attorneys General, Tallahassee, for Appellee.

MARSTILLER, J.

      We have for review the trial court's denial of Appellant's dispositive motion

to suppress evidence he was driving with a suspended or revoked license,[1] which

_____

[1] Reviewing a motion to suppress presents a mixed question; findings are reviewed for sufficient evidence, and the application of the law to those findings is reviewed *de novo*. *See Berry v. State*, 86 So. 3d 595, 598 (Fla. 1st DCA 2012).

led the court to find Appellant in violation of community control. Because the deputy sheriff who stopped Appellant's vehicle lacked the reasonable, articulable suspicion of criminal activity necessary to justify what the court determined—and the State conceded—was an investigatory stop, we conclude the court erred in denying the motion to suppress.

Appellant was on two years' community control, followed by two years' probation, for committing battery on a law enforcement officer and resisting an officer with violence. On the night in question, the Okaloosa County Sheriff's Office received two anonymous calls complaining of a disturbance at a particular residence or business located at the end of a privately-maintained road. The Sheriff's Office had received complaints in the past about disturbances at the property; some complaints were founded, some were not. The first anonymous call that night indicated firearms may be involved. When deputies investigated, they found no disturbance. Sometime later, a second call came in reporting a disturbance at the property, this time alleging someone on the property was overheard shouting "Shoot me now!" Two deputies responded, each in his own cruiser. The first deputy to arrive saw a vehicle leaving the property as he approached, and radioed to the second deputy, who was nearer to the intersection of the private road and the public street, to stop the vehicle. The second deputy, seeing the vehicle coming directly toward him, activated the blue lights on his

cruiser, causing the then-unknown driver to stop his vehicle "beak to beak" with the cruiser. When Appellant began to get out of the vehicle, the deputy directed him to stay put. The deputy testified at the suppression hearing he did so because of concerns, based on the anonymous call, that a firearm may be present. Upon approaching the vehicle, however, the deputy recognized Appellant, knew he was on community control, and knew his driver's license was suspended. At that point, he arrested Appellant for driving with a suspended license. The deputy also smelled alcohol on Appellant's breath and found a cup containing an alcoholic beverage in the passenger or back seat of Appellant's vehicle.

The State later filed an affidavit of violation of community control based on the new law violation and failure to abstain from using alcohol. Upon denying Appellant's motion to suppress, the trial court found only the new law violation proven, revoked Appellant's community control on that basis, and entered judgment sentencing him to 36 months in prison.

It is well settled that, to effect a constitutionally-permissible investigatory stop, a law enforcement officer must have a well-founded, articulable suspicion that the person stopped has committed, is committing, or is about to commit a crime. § 901.151, Fla. Stat. (2012), *Terry v. Ohio*, 392 U.S. 1 (1968); *Popple v. State*, 626 So. 2d 185, 186 (Fla. 1993); *Berry v. State*, 86 So. 3d 595, 598 (Fla. 1st

3

DCA 2012). "Mere suspicion is not enough to support a [*Terry*] stop." *Popple*, 626 So. 2d at 186.

The parties assert that whether the deputy who stopped Appellant's vehicle had the requisite well-founded suspicion of criminal activity turns on how the anonymous calls are characterized. *See State v. Maynard*, 783 So. 2d 226, 228, (Fla. 2001). Appellant argues the calls were merely anonymous tips that, absent additional information obtained by the deputies, were not sufficiently reliable to justify the detention that occurred here. The State counters that the callers can be reasonably characterized as citizen informants whose calls are presumed reliable and generally are sufficient to support an investigatory detention without further corroboration.

"Reasonable suspicion . . . is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of circumstances—the whole picture," that must be taken into account when evaluating whether there is reasonable suspicion." *Alabama v. White*, 496 U.S. 325, 330 (1990) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). "'In analyzing whether third-party information can provide the requisite reasonable suspicion, courts have looked to the reliability of the informant as well as the reliability of the information provided.'" *Berry*, 86 So. 3d at 598 (quoting *D.P. v. State*, 65 So. 3d 123, 127 (Fla. 3d DCA 2011)). The

4

less reliable the tip, the more independent corroboration will be required to establish reasonable suspicion. *White*, 496 U.S. at 330. On the "spectrum of reliability," an anonymous tip has "relatively low" reliability. *Berry* at 598; *see also State v. DeLuca*, 40 So. 3d 120, 124 (Fla. 1st DCA 2010). This is because "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations and given that the veracity of persons supplying [such] tips" cannot be determined. *White* at 329. Thus, "[a]n anonymous tip requires that the information be 'sufficiently corroborated' by the officer to constitute reasonable suspicion[.]" *Berry* at 598 (citing *State v. Evans*, 692 So. 2d 216, 218 (Fla. 4th DCA 1997)). A citizen informant, on the other hand, is presumed highly reliable because his or her "motivation in reporting illegality is the promotion of justice and public safety," and because the informant gives his or her name to police and "can be held accountable for the accuracy of the information given." *DeLuca*, 40 So. 3d at 124. Therefore, "[a] tip from a citizen informant is sufficient by itself to provide law enforcement with reasonable suspicion to conduct a *Terry* stop." *Berry* at 599 (citing *State v. Maynard,* 783 So. 2d 226, 228 (Fla. 2001)).

Applying these principles to the facts in the instant case, we conclude the deputy who stopped Appellant's car did not have a well-founded suspicion of

5

criminal activity needed to effect a lawful *Terry* stop. The disturbance calls that sent the deputies to the property on the night question were anonymous tips bereft of any details indicating the information given was reliable. Indeed, the first call proved to be unfounded after deputies investigated. The second call, alleging someone was overheard yelling "Shoot me now," still did not provide any specific, articulable facts indicating that Appellant (or any other identifiable person, for that matter) was engaged in criminal activity. Thus, even if, as the State argues, we could characterize the callers as citizen informants, there still was insufficient information given to support a reasonable, articulable suspicion that a crime had been, or was being, committed. *See Florida v. J.L.*, 529 U.S. 266 (2000) (holding anonymous tip claiming person was carrying a gun insufficient, without more, to justify stop and frisk of the person); *Baptiste v. State*, 995 So. 2d 285 (Fla. 2008) (holding anonymous 911 call describing person and alleging person had waved firearm in public not sufficiently reliable to provide reasonable suspicion for investigative stop of person matching the description).

Because the anonymous calls provided neither the quantity nor the quality of information necessary to create reasonable suspicion, the deputies needed additional, independently-obtained information. They had none, for they had not yet begun to investigate the alleged disturbance when Appellant's car was stopped. Nor did they observe any behavior by Appellant to generate reasonable suspicion

6

he was or had been engaged in criminal activity involving a firearm. *Compare Hudson v. State*, 41 So. 3d 948 (Fla. 2d DCA 2010) (finding reasonable suspicion where officers received anonymous call that a man was burglarizing cars in stadium parking lot, and observed person matching "vague description" carrying two duffel bags and hurriedly walking away from stadium) *and J.H. v. State*, 106 So. 3d 1001 (Fla. 3d DCA 2013) (finding no reasonable suspicion where officer responded to scene of fight reported by anonymous caller and observed no fight, but saw and stopped a youth matching description who was merely sweating and out of breath and appeared nervous).

If the second deputy's action could be characterized as attempting a consensual encounter with Appellant, see generally *Popple*, 626 So. 2d at 186, we could affirm the trial court's denial of Appellant's motion to suppress. But the deputy effected the stop of Appellant's car by activating the blue lights on his cruiser, positioning the cruiser on the road such that Appellant had to stop directly opposite, and ordering Appellant to remain in the car when he attempted to step out. "Although there is no litmus-paper test for distinguishing a consensual encounter from a seizure, a significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person's freedom to leave or freedom to refuse to answer inquiries[.]" *Id*. at 187. On the other hand, "a person is seized if, under the circumstances, a reasonable person would conclude

that he or she is not free to end the encounter and depart." *Id*. at 188.  What occurred in this case was a seizure—an investigatory stop for which a reasonable, articulable suspicion of criminal activity *by Appellant* was required.  Because the anonymous calls failed to provide deputies with the requisite level of suspicion, the stop of Appellant's car was unlawful, and the trial court should have granted the motion to suppress.  Accordingly, we reverse the order of revocation of community control and the subsequent judgment and sentence, and direct the trial court to reinstate Appellant's community control.

REVERSED and REMANDED with directions.

ROWE and RAY, JJ., CONCUR.