LAMBERT, J.
The State appeals an order granting Gary Bullock’s motion to suppress all evidence obtained as a result of a warrantless arrest. Because we find that law enforcement had reasonable suspicion to conduct an investigatory stop and that the investigatory stop led to probable cause for Bullock’s arrest, we reverse.
In this case, law enforcement received a tip that an individual by the name of Paul Jenkins had traveled from North Carolina and was at the Roadway Inn in Apopka to purchase and distribute pills. Sergeant Vidler and other deputies with the Orange County Sheriffs Office went to the motel and made contact with the manager, who confirmed that Jenkins was staying at the motel. Once contact was made with Jenkins, he agreed to cooperate and allowed the deputies to search his room, which revealed pills found in the specific location in the room as advised by Jenkins. During the search, Jenkins informed the deputies that he had just received a text message from an individual that he had previously paid $200 for 30 Oxymorphone pills. Jenkins showed the deputies the text message and explained to them that a white male named Gary would be delivering the pills to the motel room in approximately ten minutes and that Gary would be driving an older model, white, four-by-four, Dodge pickup truck with an Alabama license plate.
The deputies got a team together and set up in the motel room. Just as Jenkins had described, approximately ten minutes later, an older model, white, four-by-four, Dodge pickup truck with an Alabama license plate, driven by a white male, pulled into the motel parking lot. The team then made contact with the driver and secured him.[1] Sergeant Vidler spoke to the driver, *704 who was identified as Gary Bullock. Sergeant Vidler identified himself as a sergeant with the Orange County Sheriffs Office and informed Bullock that he was stopped because they suspected him of possessing illegal narcotics. Bullock immediately confirmed that he was delivering pills to the motel, told Sergeant Vidler that the pills were in the truck, and identified the specific location of the pills in the truck. Upon a search of the vehicle, Sergeant Vidler found 31 Oxymorphone pills, less than 20 grams of Cannabis, and drug paraphernalia. Bullock was then arrested and charged with: (1) possession of more than four grams, but less than 14 grams, of Oxymorphone; (2) possession of less than 20 grams of Cannabis; and (3) possession of drug paraphernalia.
At the suppression hearing, Sergeant Vidler was the only witness who testified. The trial court determined that the primary issue to be resolved was whether the text message that Jenkins received, stating “I’ll be there in ten minutes,” was sufficient to corroborate Jenkins’ tip that a male named Gary would be delivering pills to the motel in approximately ten minutes. In granting the motion to suppress, the trial court found that Jenkins was analogous to an untested confidential informant and that because Jenkins was (1) unknown to the deputies, (2) had no agreement to cooperate, (3) gave a description of the vehicle, but no specific description of Bullock, and (4) since Bullock’s driving pattern into the motel did not distinguish him from any other patron, the court concluded that “law enforcement lacked probable cause to arrest the Defendant and then to search his vehicle incident to arrest.”
“The standard of review for motions to suppress is that the appellate court affords a presumption of correctness to a trial courts [sic] findings of fact but reviews de novo the mixed questions of law and fact that arise in the application of the historical facts to the protections of the Fourth Amendment.” Wyche v. State, 987 So.2d 23, 25 (Fla.2008) (citing Fitzpatrick v. State, 900 So.2d 495, 510 (Fla.2005)).
The State argues on appeal that the determinative issue is whether there was sufficient reasonable suspicion of criminal activity for law enforcement to conduct an investigatory stop. The State contends that law enforcement had enough information to justify the initial stop and questioning of Bullock, and once he admitted to delivering pills, the subsequent search of Bullock’s vehicle and his arrest were proper. We agree.
There are three types of police encounters with citizens: (1) a consensual encounter; (2) an investigatory stop; and (3) an arrest. Popple v. State, 626 So.2d 185, 186 (Fla.1993). For an investigatory stop, “a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. In order not to violate a citizen’s Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity.” Id. (citation omitted); see also Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (“One general interest is of course that of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.”).
Reasonable suspicion can develop as a result of direct observations by law *705 enforcement or by information provided by third parties. See Berry v. State, 86 So.3d 595, 598 (Fla. 1st DCA 2012). “In analyzing whether third-party information can provide the requisite reasonable suspicion, courts have looked to the reliability of the informant as well as the reliability of the information provided.” Id. (quoting D.P. v. State, 65 So.3d 123, 127 (Fla. 3d DCA 2011)). In determining whether the informant or the information is reliable, the court must consider the totality of the circumstances. Id. (citing Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). “[A]n informant’s ‘veracity,’ ‘reliability’ and ‘basis of knowledge’ are all highly relevant in determining the value of his report.” Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The First District Court has described the spectrum of reliability of tips as follows:
The spectrum of reliability of a tip ranges from the “anonymous, unknown tipster whose assertions of criminal activity typically cannot be verified and thus require independent corroboration,” which has relatively low reliability, to the relatively high reliability of a tip from the “citizen-informer crime victim whose motivation in reporting illegality is the promotion of justice and public safety rather than financial gain, and who can be held accountable for the accuracy of the information given.” State v. DeLuca, 40 So.3d 120, 124 (Fla. 1st DCA 2010); see also Baptiste v. State, 995 So.2d 285, 291-92 (Fla.2008); State v. Evans, 692 So.2d 216, 219 (Fla. 4th DCA 1997). In between these types of tips is the face-to-face anonymous tipster whose identity cannot be ascertained, the face-to-face anonymous tipster whose identity is ascertainable, and the paid informant, among others. “One simple rule” does not apply to every situation. Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
Berry, 86 So.3d at 598.
In this case, we find that Jenkins was essentially a face-to-face anonymous tipster whose identity was ascertainable. See id. Accordingly, law enforcement was required to sufficiently corroborate Jenkins’ information in order to have the requisite reasonable suspicion to justify an investigatory stop. See id. (“An anonymous tip requires that the information be ‘sufficiently corroborated’ by the officer to constitute reasonable suspicion because the tipster’s veracity, reliability, and basis of knowledge are typically unknown.”).
Based on the totality of the circumstances, we find that Jenkins’ information was sufficiently corroborated by law enforcement prior to the detainment of Bullock. Jenkins informed law enforcement of the basis of his knowledge of the information and showed Sergeant Vidler the text message he received. Jenkins provided the deputies with a detailed description of the vehicle that Bullock would be arriving in and the time that Bullock was expected to arrive. Each piece of information provided by Jenkins was verified when Bullock arrived at the motel in the same vehicle described by Jenkins and in the time frame provided by Jenkins. Importantly, Jenkins was able to predict Bullock’s future behavior and provided law enforcement with detailed information that would not have been known by the general public. See White, 496 U.S. at 332, 110 S.Ct. 2412 (noting the importance of the informant’s ability to predict future behavior that the general public would have no way of knowing in determining whether an anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify an investigatory stop); cf. Gates, 462 U.S. at 245-46, 103 S.Ct. 2317 (finding that an anonymous, unknown informants’ ability to *706 accurately predict future actions of a third party that were ordinarily not easily predicted was sufficient to establish probable cause for a search). Although Jenkins may have been at the lower end of the spectrum of reliability, we find that once law enforcement officers sufficiently corroborated his information, this provided the requisite reasonable suspicion to justify an investigatory stop and briefly detain Bullock. See State v. Miranda, 701 So.2d 424, 426 (Fla. 3d DCA 1997) (stating that since “[t]he time, place, and description matched the information given ... there was a reasonable suspicion to justify an investigative stop”).
After Bullock was detained, he confirmed that there were pills in the truck, which then provided law enforcer ment officers with probable cause to search the truck. Upon finding the pills, law enforcement had probable cause to arrest Bullock. Accordingly, we reverse the trial court’s order granting Jenkins’ motion to suppress and remand for further proceedings.
REVERSED and REMANDED.
PALMER and EVANDER, JJ., concur.

. At the suppression hearing, Sergeant Vidler testified that the driver was secured for the *704 deputies’ safety to make sure he did not have any weapons.